**In re YELLOW LIMOUSINE SERVICE, INC., Debtor.**

**Bankruptcy No. 81–00708EG.**

United States Bankruptcy Court, E. D. Pennsylvania.

Aug. 23, 1982.

Charles M. Golden, Daniels, Golden & Saltz, P. C., Philadelphia, Pa., for debtor, Yellow Limousine Service, Inc.

Samuel L. Spear, Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for Taxicab Drivers Local 156, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issue presented herein is whether we should grant the debtor's application to reject a collective bargaining agreement between it and the union representing its employees. We conclude that after balancing the equities, the debtor's application should be granted.

The facts of this case are as follows:[1] On February 27, 1981, Yellow Limousine Service, Inc. ("the debtor") filed a petition for a reorganization under chapter 11 of the Bankruptcy Code ("the Code") and, shortly thereafter, filed an application to reject an executory contract with its employees' union. That contract was a collective bargaining agreement between the debtor and local 156, IBICW & J of A ("the union") dated September 9, 1980. The union filed an answer objecting to the application.

Section 365(a) of the Code permits the trustee, subject to the approval of the court, to assume or reject any executory contract or unexpired lease of the debtor.[2] That action provides that:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

Under § 1107(a) of the Code, the debtor in possession in a case under chapter 11 has the same rights, duties and functions of a trustee, including the right to assume or reject an executory contract.[3] That subsection provides that:

(a) Subject to any limitations on a trustee under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

The usual test for determining whether the court should approve an application by the debtor or trustee to reject an executory contract is the "business judgment" test which involves simply a determination of whether rejection of the contract would benefit the estate.[4] However, where

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

2. 11 U.S.C. § 365(a).

3. *Id.* at § 1107(a).

4. *See, generally*, 2 Collier on Bankruptcy ¶ 365.03 at 365–14 to 365–18 (15th ed. 1981).

the contract sought to be rejected is a collective bargaining agreement, more stringent tests have evolved because such a case involves a conflict between two important federal policies. The first is the policy underlying chapter 11 of the Code which is "to restructure a business's finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders." [5] The second is the federal policy expressed in the National Labor Relations Act ("the NLRA") which is to promote industrial peace by facilitating collective bargaining. The latter policy is promoted, *inter alia*, by § 8(d) of the NLRA which prohibits a party to a collective bargaining agreement from unilaterally terminating or modifying that agreement,[6] while the policy embodied in the Bankruptcy Code is promoted by allowing a debtor to reject an executory contract, including a collective bargaining agreement, under § 365(a) of the Code.

The United States Court of Appeals for the Third Circuit recently considered the conflict between the above two policies and enunciated the proper test for determining when the policy behind the Bankruptcy Code should prevail over the policy of the NLRA thus permitting the debtor to reject a collective bargaining agreement. In the case of *In re Bildisco*,[7] the Court of Appeals rejected the more stringent test adopted by some courts which require the debtor or trustee to show that the collective bargaining agreement it seeks to reject is "onerous and burdensome to the estate, so that failure to reject will make a successful arrangement impossible." [8] Rather, the Court of Appeals stated that the proper test

to be used in accomodating the policies behind the NLRA and the Bankruptcy Code requires first, that the debtor "demonstrate that the continuation of the collective bargaining agreement would be burdensome to the estate" [9] and, then, that the court make a "thorough scrutiny, and a careful balancing of the equities on both sides." [10]

Applying the *Bildisco* test to the instant case, we conclude that the debtor's application to reject the collective bargaining agreement should be granted. The debtor's general manager testified that in the year preceding the filing of the debtor's petition the stockholders of the debtor (a relatively small company) had been obliged to contribute over $22,000.00 to cover merely the wages guaranteed to the employees by the debtor. This loss was caused by the fact that the employees were guaranteed a set wage even if they failed to bring in sufficient revenues to cover that wage. The general manager testified that, in addition to the above contributions to pay the guaranteed wages, the stockholders had to pay additional funds to cover the employees' vacation, sick pay and other benefits [11] as well as the other expenses of operating the business. Furthermore, the general manager testified that the debtor had been able to cut costs and begin making a profit since the filing of its petition because of the institution of a franchising system. Under that system, the debtor had laid off all of its drivers and maintenance employees and allowed drivers instead to purchase vans and pay the debtor a franchising fee. The general manager asserted that by utilizing such a system the drivers had more incentive to bring in additional revenues which is, in fact, what occurred.

**5.** H.R.Rep.No.595, 95th Cong., 1st Sess. 220 (1977), *reprinted* in 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6179.

**6.** 29 U.S.C. § 158(d).

**7.** 682 F.2d 72 (3d Cir. 1982).

**8.** *Id.* at 79, *citing In re Alan Wood Steel Co.*, 449 F.Supp. 165 E.D.Pa.1978), *appeal dismissed*, 595 F.2d 1214 (3d Cor. 1979); *In re Penn Fruit Co.*, 92 L.R.R.M. (BNA) 3548 (E.D. Pa.1976); *Brotherhood of Railway, Airline and Steamship Clerks v. REA Express, Inc.*, 523

F.2d 164 (2d Cir.), *cert. denied*, 423 U.S. 1017, 96 S.Ct. 451, 46 L.Ed.2d 388 (1975).

**9.** *In re Bildisco*, at 81.

**10.** *Id.* at 79 and 81, citing *Shopmen's Local Union No. 455 v. Kevin Steel Products, Inc.*, 519 F.2d 698 (2d Cir. 1975).

**11.** *See* Exh. B. which shows that, in addition to the $22,000.00 loss for guaranteed wages, the debtor lost $12,000.00 for other benefits in the year preceding the filing of its petition.

Based on all of the above, we conclude that (1) the collective bargaining agreement is burdensome to the debtor and (2) the equities favor rejection of that agreement. Clearly, a contract which costs the debtor over $22,000.00 in one year is burdensome and could endanger the debtor's reorganization. Furthermore, we find that the fact that, by switching to a franchising operation, the debtor has been able to make a profit for the first time in several years [12] weighs heavily in favor of allowing the debtor to reject that agreement. Although the rejection of the agreement will result in the loss of jobs by the 13 employees of the debtor, the testimony was that at least four of those employees have entered into franchising agreements with the debtor. Furthermore, the employees who lose their jobs because of the rejection of the agreement will have claims against the debtor in the chapter 11 proceedings. We conclude that, by allowing the debtor to reject that agreement, the debtor will be able to successfully reorganize to the benefit of its creditors, including its employees.

---

**12.** The general manager testified that the debtor had been losing money since 1977 while recently it had begun to make a profit.