**In re HAWAII DIMENSIONS, INC., Debtor.**

**Bankruptcy No. 83–00153.**

United States Bankruptcy Court, D. Hawaii.

June 1, 1984.

Susan Tamanaha, Honolulu, Hawaii, for movant.

Randolph R. Slaton, Honolulu, Hawaii, for debtor.

Kevin Chang, Honolulu, Hawaii, for landlord.

## MEMORANDUM AND ORDER DENYING MOTION FOR RECONSIDERATION

JON J. CHINEN, Bankruptcy Judge.

This matter came on for hearing on March 28, 1984, April 4, 1984 and April 5, 1984 on a Motion for Reconsideration of Order Authorizing Debtor to Reject Lease Agreement filed by Commercial Finance Limited (hereinafter "Commercial Finance"). Based upon the memoranda filed, the arguments of counsel and the pleadings and records filed in this case, the Court enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

Hawaii Dimensions, Inc. (hereafter "Debtor") filed a voluntary petition for Chapter 11 on March 29, 1983.

As of July, 1983, debtor owed its landlord, Center Properties, (hereafter "landlord") back rent of approximately $45,000.00.

On July 27, 1983, a hearing was held before this Court on the landlord's application to require debtor to assume or reject the lease of certain ground floor commercial space at the Amfac Center. At this hearing, counsel for debtor stated that, because debtor was losing money each month and had been unsuccessful in negotiating a sale of the business acceptable to all parties, it was unable to continue business and would close the business the following day and convert to a Chapter 7 proceeding.

As a result of debtor's negative cashflow situation, the Court authorized rejection of the lease, stating that a debtor in such straits could not be forced to continue business.

Present at the above hearing were Randolph Slaton, counsel for debtor, then counsel for the landlord, Kevin Chang, and Susan Tamanaha, counsel for Commercial Finance, Ltd., a debtor in a separate Chapter 11 proceedings and holder of a secured interest in the leasehold in question herein.

Within a few days of the hearing, Debtor rejected the lease, closed the business and turned over the keys to the premises to the landlord. The written Order Authorizing Debtor to Reject Lease Agreement was filed on August 29, 1983. On September 15, 1983, debtor filed a written Notice of Rejection of Unexpired Lease.

On September 9, 1983, Commercial Finance filed the instant Motion for Reconsideration of Order Authorizing Debtor to Reject Lease. Hearing on this motion was continued several times by the parties due to efforts to settle the dispute. When the motion was heard on March 28, 1984, debtor's arrearages in lease rent had accrued to approximately $100,000.00.

Commercial argued that the proper standard for rejection of a lease was the best interests of the creditors and that the rejection could not be authorized without first obtaining relief from the automatic stay in Commercial's bankruptcy proceeding since Commercial's interest would be adversely affected.

In its Supplemental Memorandum in Support of the Motion for Reconsideration and at the March hearing, Commercial raised for the first time the question of the effect of the rejection of the lease by debtor herein. Commercial argued that rejection did not automatically terminate the lease but rather merely took the lease out of the administration of the estate. Counsel for the original and successor landlords (Bishop Street Limited Partners having succeeded to the interests of Center Properties as landlord in the interim) contended that rejection constituted termination of the lease. Further memoranda were requested by the Court on the question of the effect of the rejection of the lease.

## CONCLUSIONS OF LAW

■ The test for determining whether the court should approve debtor's rejection of the lease is the "business judgment test." *In re Chi-Feng Huang,* 23 B.R. 798 (Bkrtcy.App.Cal.1982); *In re Yellow Limousine Service, Inc.,* 22 B.R. 807 (Bkrtcy. Pa.1982); *Borman's, Inc. v. Allied Supermarkets, Inc.,* 706 F.2d 187 (C.A.Mich. 1983).

■ At the March hearing, no grounds were submitted to the Court sufficient for it to hold that debtor had not correctly exercised its business judgment in rejecting a burdensome lease. The hardship on other parties due to the rejection is not a factor to be weighed in determining whether to approve rejection. *Chi-Feng Huang, supra; Borman's, Inc., supra.*

■ 11 U.S.C. § 362 governs the protections afforded a debtor pursuant to the automatic stay. Commercial has failed to show nor can this Court justify a ruling that the provisions of this section protect

Commercial, as a holder of a secured interest in the lease, from the rejection. The provisions of § 362(a) are specific in detailing the actions stayed by a bankruptcy filing; these sections do not include the rejection of a lease in which another debtor (Commercial) holds a secured interest. The Court also notes that Commercial had protective measures available to it by way of the mortgage protection clause in its lease, which it did not exercise.

Turning to the question of the effect of rejection of a lease by debtor-lessee, the Court first notes the lack of a specific statutory provision in Title 11 of the United States Code governing this situation. However, an examination of various provisions of the Bankruptcy Code dealing with rejection of a lease and the underlying legislative history are revealing.

Section 365(h)(1), dealing with a debtor-lessor situation, states that if an unexpired lease is rejected by the debtor-lessor, "the lessee under such lease may treat the lease as terminated by such rejection, or, in the alternative, may remain in possession for the balance of the term of such lease and any renewal or extension of such term that is enforceable by such lessee under applicable nonbankruptcy law."

The legislative history of the Code amplifies this provision as follows:

"Subsection (h) protects real property lessees of the debtor if the trustee rejects an unexpired lease under which the debtor is the lessor (or sublessor). The subsection permits the lessee to remain in possession of the leased property *or to treat the lease as terminated* by the rejection. (underscoring added)." H.Rep. No. 95–595, p. 349, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6305.

Section 365(h) and the underlying legislative history reveal the clear intent of Congress to protect a lessee-in-possession pursuant to lease with a debtor-lessor whose rejection would otherwise unilaterally terminate the lease.

■ Where the debtor-lessee in possession rejects the lease, it is clear that debtor no longer desires to remain in possession but rather desires the cancellation or termination of the lease. The "protection" then afforded the other party to the lease, the nondebtor lessor, as stated in § 502(b)(7) is to claim "damages resulting from the termination of a lease of real property...."

■ The interrelationship of § 365(h) and § 502(b)(7), the former referring to rejection and the latter to termination, further reveal the intent of Congress that the effect of a debtor lessee's rejection is the termination of the landlord-tenant relationship. The fact that Congress did not include a statutory provision to the contrary is further support for the proposition that rejection of a lease constitutes termination.

Although courts have dealt with various aspects of rejection of a lease, few, if any, have discussed the effect. Those which have, are in accord that rejection constitutes termination. In *In re O.P.M. Leasing Services, Ltd.*, 30 B.R. 642 (Bkrtcy.S.D. N.Y.1983), although the court was dealing with a setoff issue, the court clearly treated the rejection as termination of the lease.

Based upon the foregoing findings of fact and conclusions of law, the Motion for Reconsideration is hereby denied.