**In re FEYLINE PRESENTS, INC., Debtor.**

**Matthew D. SKEEN, Trustee, Plaintiff,**

v.

**The DENVER COCA–COLA BOTTLING COMPANY, Defendant.**

**Bankruptcy No. 86 B 4544 M.**
**Adv. No. 87 E 0009.**

United States Bankruptcy Court,
D. Colorado.

Jan. 4, 1988.

---

**624**

Philip A. Pearlman, Skeen & Pearlman, Denver, Colo., for plaintiff.

Harry L. Simon, Harry L. Simon, P.C., Denver, Colo., for defendant.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

CHARLES E. MATHESON, Chief Judge.

This matter comes before the Court on cross-motions for summary judgment filed by the Defendant Denver Coca–Cola Bottling Company ("Coke") and the Plaintiff Matthew D. Skeen, as the Trustee and successor-in-interest to the Debtor Feyline Presents, Inc. ("Feyline") in the above adversary proceeding.

The Trustee herein filed his First Amended Complaint on April 20, 1987. In that Complaint he alleged that Feyline and Coke entered into an agreement in December, 1982, under which Coke was to pay a fee and Feyline was to provide promotional identification and to receive exclusive rights to the sale of soft drinks at Feyline's "Summer of Stars" concerts. This agreement was extended in October, 1984. On November 24, 1986, Coke notified Feyline by letter of Coke's intent to forego further performance on its part under the agreement and make no further payments. The Trustee asserts that Coke's actions constitute a breach of contract and seeks damages in the amount of $300,000, plus other damages to be proved at trial.

Coke filed its motion for summary judgment and, in that motion, Coke argues that its agreement with Feyline was an executory contract which the Trustee failed to assume within sixty (60) days of the conversion of the case. Thus, it is argued that the contract was rejected as of the date immediately preceding the date of the petition. Therefore, Coke asserts that there was no agreement for it to have breached and there can be no recovery for breach of the nonexisting contract. In addition, Coke claims that it would have had a valid defense to any attempt at assumption of the contract because the contract could be characterized as one for personal services, or, in the alternative, as one to provide financial accomodations, which in either event would make the contract nonassumable.

In response to Coke's motion for summary judgment the Trustee filed a cross motion for partial summary judgment, seeking judgment in his favor on the issue of liability. The Trustee argues that the contract was in effect and enforceable against Coke at the time that Coke breached the contract by giving notice of non-performance. Because of that breach, the Trustee argues that Coke's failure to perform harmed Feyline's reorganization efforts, thereby causing damages.

Summary judgment may be granted only where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Carey v. United States Postal Service,* 812 F.2d 621, 623 (10th Cir.1987). When a court reviews a motion for summary judgment, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *Matsushita Electronic Industries Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), *quoting United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, the motion must contain more than mere conclusory allegations in order to raise an issue of fact. *Instructional Systems Development Corp. v. Aet-*

*na Casualty & Surety Co.*, 817 F.2d 639, 644 (10th Cir.1987).

Many of the facts which underlie the litigation in this case are not in dispute and are evidenced either by attachments to the defendant's motion for summary judgment (which attachments are adopted for purposes of the cross motion for summary judgment by the plaintiff), or by the file in this case. Those facts disclose that in 1982 Feyline was engaged in the business of organizing and promoting various musical and/or artistic events. Included in the Feyline activities was a program of concerts referred to as the "Summer of Stars". In 1982, Feyline and Coke entered into an agreement pursuant to which Feyline was to proceed with the presentation of the "Summer of Stars" concerts and Coke, in consideration for payments to be made, would receive exclusive soft drink product association and identity with all attractions produced as part of the concert series. Under the agreement, Coke advanced, for the initial 1983 season, $100,000 in cash with additional payments made thereafter.

The contract between Coke and Feyline was extended on October 31, 1984, with further payments to be made for 1985, 1986, and 1987. Feyline filed a case under Chapter 11 of the Bankruptcy Code in June, 1986. At the time the case was filed, Coke had already made a $137,500.00 cash payment in December, 1985, as an advance payment on the 1986 "Summer of Stars" program. Feyline fully performed the presentation of the 1986 program and, at the end of the season, Coke paid the balance of $137,500.00 due under the terms of the contract for the 1986 season.

Subsequent to the completion of the 1986 "Summer of Stars" concert series, Feyline moved forward in its Chapter 11 case with its attempts at reorganizing its business. Those attempts were rejected by the bankruptcy court in orders which cast doubt on the Debtor's good faith in promoting the reorganization efforts.

Pursuant to the agreement between Coke and Feyline, Coke was obligated to pay Feyline $150,000 on December 15, 1986, as a prepayment for the 1987 "Summer of Stars" concert series. Prior to that date, on November 24, 1986, Coke wrote Feyline and advised Feyline that it "does not wish to proceed with exercising its options sponsoring" the 1987 "Summer of Stars" programs. The reasons stated were that Feyline's financial problems reduced the value to Coke of the "Summer of Stars" program and, further, Feyline had lost the personal services of Mr. Ruby and Mr. Melnick, representatives of Feyline with whom Coke had dealt. Therefore, the December 15, 1986, payment was not made. At that point, Feyline filed an adversary proceeding against Coke seeking damages for the anticipatory breach and repudiation of the contract by Coke.

During the pendency of the Chapter 11, Feyline had not assumed or attempted to assume the contract with Coke. Similarly, Coke had not filed a motion with the Court for an order to require the Debtor to assume or reject the executory contract. After Coke's default and the commencement of this adversary proceeding, the Chapter 11 case was converted to Chapter 7 and Mr. Skeen was appointed as the Trustee. During the 60–day period following conversion of the case, the Trustee did not take steps to assume the contract but has continued to pursue the claims against Coke to recover the damages allegedly caused to this Debtor's estate by reason of Coke's breach of the contract.

Neither party disputes the conclusion that the contract in question was indeed an executory contract within the meaning of 11 U.S.C. § 365. Since the contract in question had been extended through 1987, and since neither party had completed performance at the time of the filing of the bankruptcy petition, there is no doubt that it was, in fact, an executory contract as the parties agree. *In re Harms*, 10 B.R. 817, 821 (Bankr.D.Colo.1981).

The Bankruptcy Code provides that the trustee or debtor-in-possession, "subject to the court's approval" may assume or reject any executory contract of the debtor. 11 U.S.C. § 365(a). As to a debtor-in-possession, and except as to an unex-

pired lease of nonresidential real property, the trustee may assume or reject an executory contract at any time before the confirmation of the plan. However, the court, at the request of any party to such contract, may order the trustee or debtor-in-possession to determine, within a specified period of time, whether to assume or reject the contract. 11 U.S.C. § 365(d)(2). In a Chapter 7 case, if the trustee does not assume or reject an executory contract within 60 days after the order for relief, the contract is deemed rejected. 11 U.S.C. § 365(d)(1); *In re Bassett*, 74 B.R. 361 (Bankr.D.Colo.1987). Conversion of a case from one chapter to a case under another chapter constitutes an order for relief under the chapter to which the case is converted. 11 U.S.C. § 348(a). Thus, in the instant case, and in the absence of the contract repudiation by Coke, since the contract with Coke had not been assumed by Feyline prior to the time that the case was converted to Chapter 7, the Trustee then had 60 days within which to assume or reject, failing which the contract was deemed rejected. The rejection of an executory contract constitutes a breach thereof immediately before the date of the filing of the petition. 11 U.S.C. § 365(g)(1); *Int'l Brotherhood of Teamsters, Chauffers, Warehousemen and Helpers of America v. IML Freight, Inc.*, 789 F.2d 1460, 1463 (10th Cir.1986).

In simplistic terms, Coke argues that there was no binding contract until it was assumed either by Feyline or the Trustee. Since the contract was not assumed it was rejected and deemed breached by Feyline as of a date immediately prior to the filing of the petition. Therefore, Coke asserts, there essentially was no contract to which it was bound to perform and its failure to perform the nonexisting contract cannot give rise to a claim for damages for breach thereof. The Court does not agree.

In the Court's view, an executory contract under Chapter 11 is not enforceable against the debtor party, but is enforceable against the nondebtor party prior to the debtor's assumption or rejection of the contract. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 532, 104 S.Ct. 1188, 1199, 79 L.Ed. 2d 482 (1984); *In re Whitcomb & Keller Mortgage Co.*, 715 F.2d 375, 378 (7th Cir. 1983); *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1354 (9th Cir.1983). Bordewieck, *The Postpetition, Pre-Rejection, Pre-Assumption Status of an Executory Contract*, 59 Am.Bankr.L.J. 197, 200 (1985). It is the clear policy of the Bankruptcy Code that a debtor is to have a "breathing space" following a filing of a petition, continuing until confirmation of the plan, in which to choose to assume or reject an executory contract. In that interim period, as in fact occurred here, the parties to the contract may continue to perform their respective roles.

Without question, the breathing spell afforded by 11 U.S.C. § 365(d) can impose a penalty on the other party to the contract. However, that party has a remedy and that remedy is to move, pursuant to Section 365(d)(2), for an order requiring the debtor to make an early election. *In re Grant Broadcasting of Philadelphia, Inc.*, 71 B.R. 891, 16 C.B.C. 2d 1116 (Bankr.E.D.Pa. 1987). In the present case, Coke did not avail itself of that provision of the statute. Instead, it elected to give notice of termination. In the defendant's brief filed herein, the defendant justifies its action in the following manner:

> Given the debtor's obvious inability to perform its 1987 obligations under the Contract and based upon the rules of law discussed hereafter, Coca Cola elected to suspend its 1987 performance under the contract and to force the Debtor to specifically assume the contract with Coca Cola if it had serious intentions of promoting and carrying out the 1987 "Summer of Stars" concert series. (Defendant's brief page 4).

In its reply brief, Coke similarly expresses its position as follows:

> However, the Debtor's obviously precarious financial situation at that time caused the president of Coke to elect to suspend his performance under the contract, and to require the Debtor to specifically assume the contract if it desired to perform the 1987 "Summer of Stars". Coke at no time sought to terminate the

contract by suspending its performance thereof. It merely sought to require the Debtor-in-possession to take the appropriate steps to assume the contract pursuant to the Bankruptcy Rules if it had serious intentions of performing the 1987 "Summer of Stars" concert series, and to afford Coke the basic procedure and substantive rights afforded to a party in its position pursuant to the applicable rules and sections of the United States Bankruptcy Code. (Defendant's Coke's reply brief, page 17).

■ The problem with Coke's argument is that it did not proceed to exercise the rights given to it by statute to force Feyline to make an early decision on the assumption of the contract but, instead, acted unilaterally by refusing to perform. The Court notes that under Section 365 the Debtor had the right to assume the contract subject only to the Court's approval. There had not been a prepetition default under the contract by Feyline. Had such a default existed then, before Feyline could have assumed the contract, it would have been required to show or to provide adequate assurance of future performance, pursuant to Section 365(b)(1). However, since no breach had occurred, by the clear language of the statute, Feyline could have assumed the contract in December of 1987, without having to prove that it had the financial ability to perform. The question of whether Feyline's financial condition in November of 1986 was so precarious that it could not have assumed and performed its obligations to produce a 1987 summer concert series, thereby excusing further performance by Coke, is a factual issue severely in dispute which cannot be resolved on the motions for summary judgment.

The suggestion by Coke that, until assumption, there is no contract would effectively deprive a debtor-in-possession or a trustee of the benefits of the breathing spell provided by § 365 of the Code. The debtor is given the option of assuming or rejecting. In order to make that option effective, the contract must remain in effect and the other party must be bound to perform under the terms of the contract. If a nondebtor party could unilaterally cease performance on an executory contract, the powers provided to a debtor under § 365(d) would have no meaning. As noted above, a "breathing space" given to the debtors under § 365 does not leave nondebtor parties, such as Coke, in a helpless state. Coke could have availed itself of the provisions of § 365(d)(2) to force Feyline to an early decision to assume. It now argues that it effectively sought to do that by electing to suspend its 1987 performance under the contract. But, such action is simply not acceptable and exposed Coke to the prospect of a suit for damages.

By the time that the Chapter 11 case was converted, Coke had taken its unilateral step to refuse to perform and Feyline had commenced suit for damages. Since Coke had already elected to breach the contract by its November 24, 1986, letter, the Trustee's ability to assume or reject the contract post conversion was effectively destroyed. Certainly, it would make no sense for the Trustee to assume a contract on which Coke had already indicated it would not perform; and a trustee cannot assume a contract contrary to reasonable business judgment. *In re National Sugar Refining Co.*, 26 B.R. 765, 767 (Bankr.S.D.N.Y. 1983).

If Coke breached the contract of its own accord seeking to terminate its relationship with Feyline, it cannot now complain that the Trustee failed to assume the contract. The contract continued in existence as long as Feyline's case continued under Chapter 11 and Feyline may seek a remedy for its breach. Further, that remedy may now be pursued by the Trustee without the expedient or necessity of formally assuming the underlying contract.

■ Coke also argues that Section 365 cannot apply to this contract because it is a personal services contract within the meaning of 11 U.S.C. § 365(c)(1)(A). That section specifies that the trustee may not assume a contract if applicable law excuses a party other than the debtor from rendering performance under the contract. The Court observes that there is no clear evidence, beyond Coke's bald assertion, that

its agreement with Feyline was such a contract. The contract documents do not suggest a personal service contract. In any event, the contract was with Feyline, and it was Feyline which was going to perform at the time of Coke's anticipatory breach of the contract. There is nothing to indicate that Coke expected or bargained for the personal services of Mr. Fey or of any of the other individuals who were employed by Feyline. Similarly, Coke's contention that the contract constituted an agreement to provide a financial accommodation and not an ordinary executory contract conflicts with the contract documents. Thus, Coke's assertions in the brief that the contract is a personal services contract or one for a financial accommodation do no more than raise legitimate questions of fact and do not resolve those questions. Thus, summary judgment as to those issues is precluded.

In like manner, material issues of contested fact remain concerning the financial condition of Feyline in the fall of 1986 and whether the repudiation of the contract by Coke was legally justified under the circumstances. The existence of those contested issues of fact bars the entry of summary judgment for either of the parties. Such being the case,

IT IS THEREFORE ORDERED that the motion for summary judgment filed herein by the Defendant and the cross motion for summary judgment filed by the Plaintiff are denied.