### In re GUNTER HOTEL ASSOCIATES, Debtor.

### Bankruptcy No. 88–50627A.

United States Bankruptcy Court,
W.D. Texas,
San Antonio Division.

Dec. 22, 1988.

---

Timothy J. Henderson, Pendergraft, Simon, Bundschuh & Miller, Houston, Tex., for debtor.

John H. Tate II, Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., San Antonio, Tex., for Carlson Hospitality Group, Inc.

## DECISION AND ORDER REGARDING REJECTION OF LICENSE AGREEMENT

LEIF M. CLARK, Bankruptcy Judge.

Gunter Hotel Associates ("Debtor") filed a motion on November 3, 1988 to reject a license agreement with Carlson Hospitality Group, Inc. ("Carlson"). A hearing was held on December 13, 1988 on this motion and on Carlson's motion to compel rejection of the license agreement. The hearing was held contemporaneously with the hearing on confirmation of the debtor's plan. The decision on these pending motions affects the feasibility of the debtor's plan, and hence the confirmation decision hinges on their resolution.

## I. FACTS

Prior to bankruptcy, Debtor entered into a license agreement (an executory contract under Section 365 of the Bankruptcy Code) with Carlson. Under the license, Debtor was allowed to operate its hotel, the Gunter, as a "Radisson Hotel" under the "Radisson" system. Carlson was required, among other things, to furnish the Radisson Reservation System to Debtor (including a listing in the "Saber" airline reserva-tion system); to include Debtor in Carlson's directory and in its other promotional materials; to include Debtor in Carlson's national or regional group advertising and promotions; and to solicit group meetings, conventions, incentive, and travel agency business for Debtor through Carlson's national sales office. Through these services, Gunter has established a nation-wide presence.

The Debtor has fully exploited its license, developing a valuable business link with the American Automobile Association's travel arm, and placing advertising in travel publications throughout the country. The advertising of course includes the Radisson name and logo, along with Radisson's nationwide toll-free telephone number for reservations. Many of the publications are published only quarterly. Some are published only once a year.

The Debtor seeks an order permitting it to reject the license agreement, but wants to condition the terms of rejection so that the effect of rejection would be postponed for approximately sixty days after the effective date of confirmation of the plan. The Debtor also wants to have continued rights to referrals of calls made into the Radisson reservation system through 1989, so long as callers are asking for the Gunter. Debtor argues that these adjustments will enable it to enter into a new licensing agreement with another hotel chain, and will also preserve the value of goodwill it has built up in the Radisson name (to say nothing of the advertising that will continue to bear the Gunter/Radisson association for the next year or so).

The Debtor is unwilling to assume the license, primarily because of its concerns that another Carlson subsidiary is now operating another hotel in San Antonio in competition with the Gunter. If true, then Carlson would be in violation of its license. More important to the debtor's future, however, the Debtor suspects that future business would be channeled to the other hotel, threatening the Gunter's own future. In addition (though not affirmatively urged by the Debtor), the debtor may owe Carlson back license fees in the neighborhood

of $150,000, which, if in fact due, would have to be repaid in full once the license agreement were assumed.

Carlson responds that rejection cannot be conditioned, that the license must be rejected *in toto*. Carlson further argues that an extension beyond confirmation violates this court's August 4, 1988 order which required assumption or rejection before the confirmation hearing. Carlson further asserts that if the license agreement is not rejected prior to confirmation, the License Agreement will survive confirmation as an enforceable and binding contract which the Debtor cannot then reject.

After careful consideration and for the reasons stated below, this Court denies both motions and extends the deadline to assume or reject for sixty days following the effective date of confirmation.

## II. REJECTION—A BALANCING OF BURDENS AND BENEFITS

The rejection decision requires a balancing of the license agreement's burdens and benefits. *In re Chi–Feng Huang*, 23 B.R. 798, 800 (9th Cir.BAP 1982). The main concern is whether rejection will likely benefit the estate. *See, e.g., N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984); *In re Sharon Steel Corp.*, 79 B.R. 627 (Bankr.W.D.Pa. 1987); *In Re W. & L. Associates, Inc.*, 71 B.R. 962, 966 (Bankr.E.D.Pa.1987); *Johnson v. Fairco Corp.*, 61 B.R. 317, 320 (N.D. Ill.1986); *In re Condominium Ass'n of Plaza Towers South, Inc.*, 43 B.R. 18, 21–22 (Bankr.S.D.Fla.1984); *In re Yellow Limousine Service, Inc.*, 22 B.R. 807, 808 (Bankr.E.D.Pa.1982); *In Re H.M. Bowness, Inc.* 89 B.R. 238, 241 (Bankr.M.D.Fla.1988).

The testimony clearly demonstrates that rejection of the licensing agreement will likely benefit the estate *eventually*. Rejection will *not* benefit the estate if done prior to or upon confirmation of the plan, however. Hotel chains are presently negotiating with the Debtor, but these suitors are not able or willing to contract with the Debtor until *after* confirmation. The testimony also shows that 60 days is a reasonable time for a new licensing agreement to be negotiated and implemented, but that, without some lead time, the debtor will be left with no licensing agreement at all and no assurance that one will be available. For a hotel such as the Gunter, a national affiliation is all but essential, especially when it relies so heavily on good relations with travel agents and a national exposure. As expensive and chancy as the current license might be, it is still preferable to no license at all.

■ The debtor's proposal to "condition" rejection is inimical to the overwhelming case authority that a bankruptcy court is not free to re-write an executory contract upon either its assumption or its rejection. *Leasing Service Corp. v. First Tennessee Bank, N.A.*, 826 F.2d 434, 437 (6th Cir. 1987); *In re Auto Dealer Services, Inc.*, 65 B.R. 681, 684 (Bankr.M.D.Fla.1986) ("debtor may not reject the undesirable aspects of the contract while claiming the benefits of the contract"); *In re EES Lambert Associates*, 62 B.R. 328, 336 (Bankr.N.D.Ill. 1986) ("a debtor cannot retain those aspects of the contract to his benefit while rejecting the burdensome aspects thereof"); *Matter of Executive Technology Data Systems*, 79 B.R. 276, 282 (Bankr.E. D.Mich.1987) ("if a debtor elects to reject an executory contract, he rejects the benefits as well as the burdens"); *In re Allain*, 59 B.R. 107, 109 (Bankr.W.D.La.1986); *In re Silver*, 26 B.R. 526, 529 (Bankr.E.D.Pa. 1983). If the motion to reject is approved, then the Debtor immediately loses all the benefits which have accrued under the license. *In re Allain, supra; In re E.E.S. Lambert Associates, supra.* Effective upon rejection, Carlson would be relieved of any further duty to perform its end of the license. The court cannot and should not, in the name of "equity," try to blunt that consequence. Indeed, far from being inequitable, it is that very result that the court is constrained to evaluate in deciding whether rejection should even be permitted. *In re Chi–Feng Huang*, 23 B.R. 798, 800 (9th Cir.BAP 1982); *In re Silver, supra* at 529.

Thus, the difficulty facing the court is that rejection is not appropriate *at this*

*time* (though it appears it may be appropriate in the near future). Carlson insists that the assumption/rejection decision must nonetheless be made now, either by the Debtor or by operation of law. For support, Carlson points to the August 4, 1988 order.

### III. JURISDICTION TO EXTEND DEADLINE FOR REJECTION OR ASSUMPTION BEYOND CONFIRMATION HEARING

■ This court's order of August 4, 1988 setting the confirmation date as the deadline for rejection or assumption is not the absolute obstacle that Carlson contends. Bankruptcy courts retain broad discretion in determining when a debtor can assume or reject an executory contract. *See In re Monroe Well Service, Inc.*, 83 B.R. 317, 324 (Bankr.E.D.Pa.1988) (bankruptcy court's authority under 365(d)(2) to shorten the time period for rejection/assumption of utility agreements). The Debtor should be given great latitude in deciding whether to reject an executory contract. *In Re W & L Associates, Inc.*, 71 B.R. 962, 967 (Bankr.E.D.Pa.1987). Further, the Bankruptcy Rules allow such extensions. Rule 9006(b) reads:

> ... when an act is required ... to be done at or within a specified period *by ... court order*, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period originally prescribed.

Bankr.R. 9006(b) (1987) (*emphasis added*). Here, the "cause shown" is that the debtor's chances for a successful reorganization increase greatly if the rejection decision is extended past the confirmation hearing, but drop radically if rejection is compelled at this time.

There is, however, a second, more daunting hurdle for this court to clear. Bankruptcy Code Section 365(d)(2) allows a debtor to "assume or reject an executory contract ... at any time *before the confirmation of a plan* but the court, on the request of any party to such contract ... may

order [the debtor] to determine within a specified period of time whether to assume or reject such contract." 11 U.S.C. § 365(d)(2) (emphasis added). Does this court retain post-confirmation jurisdiction to decide the rejection/assumption issue?

Fortunately, there is judicial precedent. *In re J.M. Fields, Inc.*, 26 B.R. 852, 855 (S.D.N.Y.1983) held that, pursuant to a retention of jurisdiction clause in the plan of reorganization, the court had jurisdiction to permit rejection of a lease after confirmation. The Debtor's Plan contains such a clause:

> The court shall retain jurisdiction of the reorganization case after the Confirmation Date until Consummation of Plan with respect ... to hear and determine ... any matter relating to this Plan.

*Debtor's First Amended Plan of Reorganization*, Article IX, Sect. 9.01.

This court may thus retain exclusive post-confirmation jurisdiction over all matters relating to the license agreement. This exercise of post-confirmation jurisdiction promotes the purpose of reorganization and confirmation, namely the return of the debtor to the marketplace, free of judicial control and scrutiny. Rejection is fundamental to the reorganization process and provides a mechanism through which severe financial burdens may be lifted while the debtor attempts reorganization. *See, e.g., In re Sun City Investments, Inc.* 89 B.R. 245, 248 (Bkrtcy.M.D.Fla.1988); *In re Jolly*, 574 F.2d 349, 350 (6th Cir.1978). In *In re Malden Mills, Inc.*, 35 B.R. 71 (Bankr.D.Mass.1983), the court retained post-confirmation jurisdiction pursuant to a retention of jurisdiction provision to determine the debtor's pending motion to reject an executory contract. The court stressed that the "[p]olicy inherent in reorganizations makes it impossible and impractical to require all issues involving motions to reject executory contracts to be finally adjudicated prior to confirmation." *Id.* at 73. (citing *In re J.M. Fields*). The court warned that

> Requiring final determination prior to confirmation of all applications to reject ... [an executory contract], with subse-

quent appeals and possible imposition of stays, would postpone confirmation of a debtor's plan of arrangement, thus impeding the debtor's rehabilitation and return to the marketplace.

*Id.* at 857. The court thus concludes that it may extend the deadline imposed by August 4, 1988 order, and that Section 365(d)(2) does not bar such an extension.

## IV. POST–CONFIRMATION/PRE–REJECTION STATUS OF THE LICENSING AGREEMENT

██ Carlson correctly argues that the license agreement survives confirmation if rejection is delayed beyond confirmation. *In re Marrero,* 7 B.R. 586 (D. Puerto Rico 1980) the district court found "as long as rejection is not ordered, [an executory] contract continues in existence." *Id.* at 588. (citations omitted). Thus, Carlson is obligated to perform its obligations under the license agreement until 60 days after the confirmation hearing. However, Carlson may not proceed with enforcement actions against Debtor in the interim. "In the Court's view, an executory contract under Chapter 11 is not enforceable against the debtor party, but is enforceable against the nondebtor party prior to the debtor's assumption or rejection of the contract." *In re Feyline Presents, Inc.,* 81 B.R. 623, 626 (Bankr.D.Colo.1988).

The Supreme Court's *Bildisco* decision mandates this outcome. *Bildisco* held that "from the filing of a petition in bankruptcy until formal acceptance," a collective bargaining contract is not an enforceable contract. *N.L.R.B. v. Bildisco & Bildisco,* 465 U.S. 513, 104 S.Ct. 1188, 1199, 1200, 79 L.Ed.2d 482 (1984). Douglas W. Bordewieck's seminal article on executory contracts sheds light as to *Bildisco's* ramifications. Bordewieck, *The Postpetition, Pre–Rejection, Pre–Assumption Status of an Executory Contract,* 59 American Bankruptcy Law Journal 197 (Summer, 1985). Bordeweick notes that "the Court spoke in general terms; it did not limit its discussion to the particular executory contract." *Id.* at 199. The *Bildisco* analysis applies to all executory contracts, including the license agreement in this case. Until the

court acts to approve acceptance of the license, Carlson cannot enforce the license against the post-confirmation estate.

Carlson's rights prior to court-ordered rejection or assumption are not Debtor's equivalent. Bordewieck correctly points out that:

> [D]uring the period from the date of filing until the date on which the DIP [debtor-in-possession] rejects or assumes an executory contract, the non-debtor is bound to perform while the DIP temporarily is not bound to perform ... [T]he non-debtor party to an executory contract cannot require the DIP to adhere to the terms of the contract, for that contract is "unenforceable" against the DIP unless and until it is assumed. Stated differently, the *Bildisco* Court concluded that the DIP is not in fact bound by the provisions of an executory contract unless the DIP subsequently assumes the contract.

Bordewieck, 59 Amer.Bankr.L.J. at 200.

Other courts have barred nondebtors' enforcement actions against debtors prior to assumption or rejection. "An executory contract is unenforceable against a Debtor–in–Possession who has not yet assumed the contract." *In re Wilson,* 69 B.R. 960, 965 (Bankr.N.D.Tex.1987). "We hold that a formal assumption of an executory contract by a debtor is required to render an executory contract enforceable against a debtor." *In re Metro Transp. Co.,* 87 B.R. 338, 339 (Bankr.E.D.Pa.1988). "In the Court's view, an executory contract under Chapter 11 is not enforceable against the debtor party, but is enforceable against the nondebtor party prior to the debtor's assumption or rejection of the contract." *In re Feyline Presents, Inc.,* 81 B.R. 623, 626 (Bankr.D.Colo.1988). "[A]n unexpired lease, otherwise not assumed or rejected by the trustee, does not give rise to a provable claim against the debtor." *In re O.P.M. Leasing Services, Inc.,* 79 B.R. 161, 164 (S.D.N.Y.1987). "The analysis that the trustee [or debtor-in-possession] is vested with the contract but that the contract is unenforceable against him unless and until assumed is the better approach." *In re T.H.W. Enterprises, Inc.* 89 B.R. 351, 354 (Bankr.S.D.N.Y.1988).

This court orders that the motion to reject be denied, but further extends the deadline for seeking rejection for 60 days past the effective date of confirmation. Carlson's motion to compel Debtor to reject the license prior to the confirmation hearing is therefore denied. This court is not ordering rejection at this time, but neither is it ordering assumption. Furthermore, the license agreement will not be "assumed" by operation of law, because assumption of an executory contract requires an express court order. There cannot be assumption by implication. *In re A.H. Robins Co., Inc.* 68 B.R. 705, 709 (Bankr.E. D.Va.1986); *In re Memorial Hospital of Iowa County, Inc.,* 82 B.R. 478, 483–484 (W.D.Wis.1988); *In re Marrero,* 7 B.R. 586, 588 (D.Puerto Rico 1980); *In Re Gamma Fishing Co.* 70 B.R. 949, 952 (Bankr.S.D. Cal.1987). *Gamma* concluded that the "requirement of court approval furthers the Bankruptcy Code's policy of maximizing the value of the estate for the benefit of all creditors, while preserving certain rights of parties to contract with the debtor." *Id.* at 952.

By thus immunizing the Debtor from enforcement actions until rejection of the executory contract, the Debtor should be able to consummate a new license agreement and proceed with its plan of reorganization. This protection is afforded the debtor, not by virtue of the automatic stay (which expires upon confirmation), but by virtue of Section 365(d)(2). "The rights of a party to an executory contract with the debtor are not "stayed" by section 362; those rights are rendered temporarily unenforceable by section 365." Bordewieck, 59 Am.Bankr.L. J. at 214.

An extension of the deadline for assumption or rejection beyond the confirmation hearing should be granted only rarely. *In re J.M. Fields,* 26 B.R. 852 (Bankr.S.D.N.Y. 1983) wisely points out that a bankruptcy court's

> [P]ost-confirmation authority is restricted to only those matters pending at the time of confirmation. This grant is not one which keeps the debtor corporation in "perpetual tutelage" to the Court, subject to Court supervision and control over all aspects of corporate conduct.

*Id.* at 854 (citations omitted). Similarly, *In re Marrero, supra,* warned that, after confirmation, a bankruptcy court's exercise of jurisdiction "should be utilized sparingly; and for those matters directly related to debtor's confirmed plan and the rights and obligations created or affected by the plan." *Id.* at 589.

## V. ORDER OF THE COURT

In accordance with analysis above, this court

1. DENIES Debtor's Motion To Extend Effective Date of Rejection, and with it, Debtor's Motion to Reject the Licensing Agreement with Carlson.

2. DENIES Carlson's Motion to Compel Debtor to Assume or Reject The Licensing Agreement on or prior to confirmation.

3. ENLARGES *sua sponte* the court-ordered deadline for the Debtor to reject or assume the Carlson license.

4. RETAINS exclusive jurisdiction over all matters relating to the license agreement.

So ORDERED.