In re PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Debtor.

PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE, Plaintiff, Appellee,

v.

NEW HAMPSHIRE ELECTRIC COOPERATIVE, INC., Defendant, Appellant.

No. 89–1174.

United States Court of Appeals, First Circuit.

Heard Aug. 3, 1989.

Decided Aug. 24, 1989.

**12**

Daniel C. Cohn, with whom Anne E. Colleton and Fine & Ambrogne, Boston, Mass., were on brief for defendant, appellant.

Don Willenburg, with whom Richard Levin and Stutman, Treister & Glatt, Los Angeles, Cal., were on brief for plaintiff, appellee.

Before CAMPBELL, Chief Judge, TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

Faced with mushrooming costs attendant to construction of the Seabrook nuclear power plant, New Hampshire's largest electric utility, appellee Public Service Company of New Hampshire (PubServ), sought shelter under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* PubServ filed its Chapter 11 petition on January 28, 1988. At that time, it was a party to a pair of contracts with appellant New Hampshire Electric Cooperative (NHEC), a utility which services rural areas of the state. Because these agreements are central to an understanding of this appeal, we offer thumbnail sketches of them:

1. **Supply Contract.** PubServ and NHEC had a longstanding supply agreement which enabled NHEC to purchase substantially all its electricity requirements from PubServ at wholesale.

2. **Sellback Contract.** By virtue of a fractional ownership interest in Seabrook, NHEC was entitled to a small share (roughly 2.7%) of the power to be generated when and if the plant went on line. In anticipation thereof, the parties entered an ancillary agreement which obliged PubServ to purchase this power from NHEC if, and to the extent that, it proved to be more than NHEC needed. No performance was due under the Sellback Contract until, among other things, Seabrook began commercial operation and NHEC gave a half-year's advance notice to PubServ of the amount of excess power it desired to sell.

When PubServ filed for reorganization in the bankruptcy court, Seabrook was not yet operational. At the time, NHEC owed PubServ $4,794,771.74 for prepetition purchases of electricity under the Supply Contract. NHEC admitted that debt, but refused to pay it, asserting an entitlement to

retain the funds as a setoff against damages that might accrue in connection with the Sellback Contract.

PubServ commenced an adversary proceeding to recover the past-due Supply Contract obligation. The bankruptcy court, unmoved by the setoff claim, entered summary judgment against NHEC for the full amount. 89 B.R. 1012 (Bankr.D.N.H. 1988). In an unpublished memorandum and order, the district court approved. NHEC, having paid the primary debt, now appeals. Because "[p]resent fears are less than horrible imaginings," W. Shakespeare, *Macbeth*, act I, sc. iii, 11. 138–39 (1606), we do not believe that appellant has a valid, matured right of setoff. We therefore affirm the judgment below.

## Payment of Primary Indebtedness

■ As a threshold matter, appellee suggests that, inasmuch as NHEC paid the primary indebtedness pursuant to the bankruptcy court judgment (without seeking a stay), it has rendered itself ineligible to seek a setoff. PubServ seems to be saying that payment erased the underlying obligation so that there is no longer a debt owed to it against which a corresponding debt owed by it can be counterbalanced. We disagree.

NHEC seasonably asserted its right of setoff and has consistently maintained its entitlement thereto. Its payment of the prepetition indebtness was not voluntary and by no means constituted a waiver. *Cf. Irons v. FBI*, 811 F.2d 681, 686 (1st Cir. 1987) ("the common denominator of all the legal definitions of 'waiver' is the purposeful relinquishment of an appreciated right"). Were we to hold that, in a reorganization case, a creditor claiming a setoff must withhold funds from the debtor or else forfeit its setoff claim, we would be casting a monkey wrench into the gears of Chapter 11. As the House Judiciary Committee noted:

The situation for the treatment of setoff in a reorganization case is very different than in a liquidation case. In order to accomplish a successful reorganization it is important that business proceed as usual for the debtor. Setoff is an interruption in the conduct of business and may have detrimental effects on the attempted reorganization.

H.R.Rep. No. 595, 95th Cong., 2d Sess. 183, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 6144. To implement the congressional purpose, courts should attempt to minimize the dislocations attendant to setoffs. In the usual case, requiring creditors to pay the debt while leaving them free to pursue their perceived remedy nicely balances the rights and interests of the parties and furthers the goals of the statutory scheme.

■ For this reason, we rule that NHEC, under the circumstances and notwithstanding the enforced payment of its prepetition debt to PubServ, retained standing to press its alleged offsetting claim. *Cf. In re Archer*, 34 B.R. 28, 30–31 (Bankr. N.D.Tex.1983).

## Setoffs—Generally

The orderly reorganization of debtors is the paramount objective of Chapter 11. In attaining that objective, it is important—as, indeed, it is important in administering other chapters of the Bankruptcy Code—that creditors should be treated fairly. As Congress recognized, setoffs work against both the goal of orderly reorganization and the fairness principle because they preserve serendipitous advantages accruing to creditors who happen to hold mutual obligations, thus disfavoring other equally-deserving creditors and interrupting the debtor's cash flow. *See* H.R.Rep. No. 595, *supra, reprinted in* 1978 U.S.Code Cong. & Admin.News 6143–45; *see also Boston and Maine Corp. v. Chicago Pacific Corp.*, 785 F.2d 562, 566 (7th Cir.1986) (discussing inequity of preferring one creditor over other creditors of the same class "because of the happenstance" of mutual obligations). Consequently, the circle of creditors entitled to exercise setoff rights in bankruptcy is tightly circumscribed. Specifically, the Bankruptcy Code

does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the

commencement of the [bankruptcy] case ... against a claim of such creditor against the debtor that arose before the commencement of the case....

11 U.S.C. § 553(a).

■ It follows that setoff may flourish in bankruptcy proceedings only where mutuality of obligation exists: a prepetition debt, *i.e.,* a debt which arose prior to commencement of the bankruptcy case, is owed by Creditor A to Debtor, while at the same time Creditor A has some claim against Debtor which likewise arose prior to commencement of the bankruptcy case. *See, e.g., In re Rinehart,* 76 B.R. 746, 749 (Bankr.D.S.D.1987), *aff'd,* 88 B.R. 1014 (D.S.D.1988); *In re Brooks Farms,* 70 B.R. 368, 371 (Bankr.E.D.Wis.1987); *In re Morristown Lincoln–Mercury, Inc.,* 42 B.R. 413, 416 (Bankr.E.D.Tenn.1984); *In re Fulghum Const. Corp.,* 23 B.R. 147, 151 (Bankr.M.D.Tenn.1982); *see generally Boston and Maine Corp.,* 785 F.2d at 564–66 (discussing origins of, and rationale for, mutuality requirement).

■ In addition to the existence of such mutual obligations, Creditor A must also possess a valid right of setoff under some applicable provision of either federal or state substantive law; section 553(a) of the Bankruptcy Code, quoted *ante* at 13–14, is not an independent source of setoff rights. *See United States v. Norton,* 717 F.2d 767, 772 (3d Cir.1983); *In re Lott,* 79 B.R. 869, 870 (Bankr.W.D.Mo.1987); *see generally Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–18, 59 L.Ed.2d 136 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.... Unless some federal interest requires a different result, there is no reason why [property] interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.") (footnote omitted).

■ We believe that the courts below were correct in concluding that these conditions were not satisfied here; and that, as a result, Creditor A (NHEC) was not entitled to offset any amount against what it owed, prepetition, to Debtor (PubServ).

We describe briefly why appellant's claim failed to fulfill the requirements of the Code.

*Non–Existence of Substantive Basis*

What NHEC visualizes as its offsetting claim is grounded in the Sellback Contract. But, Seabrook has not begun to produce commercially-usable power. Consequently, NHEC has yet to (1) receive its first kilowatt of Seabrook-generated electricity, (2) declare any electricity surplus (giving appropriate notice and quantifying the excess, as the agreement requires), or (3) request that PubServ purchase anything. By the same token, the debtor has yet to (1) repudiate the Sellback Contract, or (2) refuse acceptance of, and payment for, energy tendered to it thereunder. Because performance remains due on both sides, the Sellback Contract comprises a classic example of what the Bankruptcy Code's framers considered to be a wholly executory contract. *See* S.Rep. No. 989, 95th Cong., 2d Sess. 58, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5844; H.R.Rep. No. 595, *supra,* 1978 U.S.Code Cong. & Admin. News at 6303.

■ The Bankruptcy Code prescribes a set course of treatment for executory contracts. Acting in the debtor's interest, the trustee, "subject to the court's approval, may assume or reject any executory contract ... of the debtor." 11 U.S.C. § 365. Ordinarily, the debtor need not commit itself to assumption or rejection of such a contract until a reorganization plan is confirmed. 11 U.S.C. § 365(d)(2). In the meantime, the executory contract remains in effect and creditors are bound to honor it. *See* Bordewieck, *The Postpetition, Pre–Rejection, Pre–Assumption Status of an Executory Contract,* 59 Am.Bankr.L.J. 197, 200, 211–13 (1985). If and when assumed, the contract operates according to its tenor. On the other hand, eventual rejection "constitutes a breach of such contract," 11 U.S.C. § 365(g); and the breach, in accord with what has been termed the "relation-back" doctrine, is treated as if it had occurred prepetition, that is, before the bankruptcy proceeding began. 11 U.S.C.

§ 502(g). Parties who wish to know where they stand may, pursuant to 11 U.S.C. § 365(d)(2), seek to compel an early election: "the court, on the request of any party to [an executory] contract ... may order the trustee to determine within a specified period of time whether to assume or reject such contract...." *Id.* But there is no assurance that the judge will acquiesce. The interests of the creditors collectively and the bankrupt estate as a whole will not yield easily to the convenience or advantage of one creditor out of many.

In this case, PubServ has neither assumed nor rejected the Sellback Contract. NHEC has never asked the bankruptcy court to set a deadline for an assumption/rejection decision. In such circumstances, the Contract continues in effect—and appellant has no provable claim thereunder against the bankrupt estate. *See Matter of Whitcomb & Keller Mortgage Co.*, 715 F.2d 375, 378–79 (7th Cir.1983); *In re Cochise College Park, Inc.*, 703 F.2d 1339, 1352 (9th Cir.1983); *Federal's, Inc. v. Edmonton Investment Co.*, 555 F.2d 577, 579 (6th Cir.1977); *Mohonk Realty Corp. v. Wise Shoe Stores*, 111 F.2d 287, 290 (2d Cir.), *cert. denied*, 311 U.S. 654, 61 S.Ct. 47, 85 L.Ed. 418 (1940); *Consol. Gas Elec. Light & Power Co. v. United Rys. & Elec. Co.*, 85 F.2d 799, 804 (4th Cir.1936), *cert. denied*, 300 U.S. 663, 57 S.Ct. 493, 81 L.Ed. 871 (1937); *In re Feyline Presents, Inc.*, 81 B.R. 623, 626 (Bankr.D.Colo.1988); *In re Shoppers Paradise, Inc.*, 8 B.R. 271, 278 (Bankr.S.D.N.Y.1980); *see also* Bordewieck, *supra*, 59 Am.Bankr.L.J. at 200.

■ NHEC portrays the relation-back doctrine as tipping the scales in its favor. We find such reliance to be grossly mislaid. We acknowledge that, when triggered by a timely postpetition rejection, the relation-back rule serves to transform a future action for breach of an executory contract into a prepetition claim subject to setoff. *See* 11 U.S.C. § 502(g). But the missing link is the event of rejection. The simple fact of this matter is that the debtor has not yet rejected—and may never reject— the Sellback Contract. Courts must deal in the reality of events, not in worst-case visions of what some uncertain future might bring. Because there has been no rejection of the Sellback Contract, no claim or cause of action has at this point accrued thereunder. *See, e.g., Cochise College Park*, 703 F.2d at 1352. Hence, there is no springboard for the backward leap which appellant essays.[1]

■ NHEC's lament that rejection of the Sellback Contract seems "all but inevitable," Appellant's Brief at 6, changes nothing. In this situation, inevitability— like beauty—is largely in the eye of the beholder. The conclusion is best written off as self-serving speculation. Perhaps more important, fear of forthcoming rejection does not excuse NHEC from its interim obligations under the Sellback Contract. *A fortiori*, such fears cannot excuse payment of monies already due under the (unrelated) Supply Contract.

■ The Bankruptcy Code places the option of assuming or rejecting executory contracts with the debtor, not with its business partners. To disturb this mechanism would unbalance the Code's overriding policy favoring debtor reorganization and rehabilitation. Debtors must be afforded breathing space to decide which contracts they wish to assume. *See Whitcomb & Keller*, 715 F.2d at 378; *Federal's*, 555 F.2d at 579; *Feyline*, 81 B.R. at 626. If appellant believes that there is some manifest unfairness in requiring it to wait while PubServ decides whether to embrace or jettison the Sellback Contract, appellant's remedy lies not in seizing an undue advantage over other creditors, but in a petition to compel election under 11 U.S.C.

1. In hawking a contrary result, appellant places great weight upon *In re Verco Industries*, 704 F.2d 1134 (9th Cir.1983). *Verco* involved a prepetition transfer avoided by the debtor, which in turn gave rise to a *valid* claim in bankruptcy. *See id.* at 1137–38. That is a far cry from the case before us. The critical distinction, we suggest, is that in *Verco* the event giving rise to the debtor's deemed prepetition liability (avoidance of the transfer) occurred before the debtor obtained its unrelated judgment against the creditor. In the case at bar, the triggering event—rejection of, or failure to perform under, the Sellback Contract—has not yet taken place.

§ 365(d)(2)—a petition which NHEC has not seen fit to file.

◾ Since appellant does not possess a matured cause of action based on the Sellback Contract, neither federal nor state law furnishes it a sufficient toehold for its setoff claim. As noted earlier, 11 U.S.C. § 553(a) is not an independent source of setoff rights.[2] NHEC cites to no other federal statute as a seedbed for its alleged right of setoff. Applicable state law likewise offers no consolation. The New Hampshire rule is straightforward:

> If there are mutual debts or demands between the plaintiff and the defendant at the time of the commencement of the plaintiff's action, one debt or demand may be set off against the other.

N.H.Rev.Stat.Ann. § 515:7. This rule is subject to an equally-straightforward qualifier:

> No debt or demand shall be set off as aforesaid unless a right of action existed thereon at the beginning of the plaintiff's action.

N.H.Rev.Stat.Ann. § 515:8.

Section 515:8 could hardly be clearer: New Hampshire's general setoff statute "do[es] not apply to debts that are not yet due." *In re Estate of Borkowski*, 120 N.H. 54, 410 A.2d 1121, 1123 (1980); *accord Varney v. General Enolam, Inc.*, 109 N.H. 514, 257 A.2d 11, 12–13 (1969); *Petition of Leon Keyser, Inc.*, 98 N.H. 198, 96 A.2d 551, 552 (1953). This, we think, ends the state-law inquiry. No performance by PubServ is now due, or has yet been due, under the Sellback Contract. Consequently, no debt thereunder can be due: no "right of action existed [on the Sellback Contract] at the beginning of the ... action." N.H.Rev.Stat.Ann. § 515:8. In short, NHEC is holding an empty bag. It possesses nothing which, for the purposes at hand, can properly offset its indebtedness to PubServ under the Supply Contract.

NHEC strives mightily to undermine this result, but to no avail. It seems to argue that the petition for reorganization under Chapter 11, in itself, constituted an anticipatory breach of the Sellback Contract under New Hampshire law. The Bankruptcy Code, however, provides quite to the contrary: insofar as is possible, there shall be continuation of the debtor's business as usual, notwithstanding the filing. *See, e.g.,* 11 U.S.C. § 365(e) (invalidating clauses that terminate or modify contracts in the event of bankruptcy). And, since the petition did not "repudiate [the debtor's] obligations or disable it from performing" on the contract, *In re Barton Co.*, 34 F.2d 517, 519 (D.N.H.1929) (citation omitted), appellant's contention is fatally flawed. Nor can the relation-back doctrine, inapplicable here in any event, transmogrify a hypothetical breach into an actual one, susceptible to setoff under the New Hampshire statutes.

Appellant's last assertion comprises a paean to equity. It is meritless. From a federal perspective, the law is settled that the bankruptcy court, in the guise of "doing equity," has no power to enlarge setoff rights beyond the dimensions sculpted by non-bankruptcy law or explicitly required by the Code. *In re NWFX, Inc.*, 864 F.2d 593, 595–96 (8th Cir.1989); *Boston and Maine Corp.*, 785 F.2d at 566. At the bottom line, the effect of equity from a state-law perspective is equally unavailing. To be sure, New Hampshire equity jurisprudence authorizes some added flexibility in the fashioning of setoffs. *See, e.g., Arcadia Knitting Mills, Inc. v. Elliott Mfg. Co.*, 89 N.H. 188, 195 A. 681, 682 (1937). But, even if this flexibility stretches so elastically as to give the bankruptcy court equitable power to relieve NHEC from its perceived plight—a matter on which we express no opinion—the bankruptcy court expressly declined to exercise equitable discretion. 89 B.R. at 1014. We do not think the equities—if they sustain NHEC's position at all—weigh so heavily in its favor as to suggest that we interfere with a decision

---

**2.** NHEC's assertion that the bankruptcy court lacked discretion to deny its setoff claim proceeds from its treatment of 11 U.S.C. § 553 as a source of substantive law. That assumption is plainly erroneous. *See In re NWFX, Inc.,* 864 F.2d 593, 595–96 (8th Cir.1989); *Norton,* 717 F.2d at 772.

made on the front lines by the judicial officer most closely familiar with this mammoth insolvency proceeding.[3]

### Conclusion

 We need go no further. For the reasons described above, NHEC was not entitled to a setoff against its prepetition debt to PubServ. There is one thing more: inasmuch as the governing principles of law were carefully elucidated by the courts below, and appellant nonetheless proceeded pervicaciously, without a realistic hope of success, we award appellee double costs under Fed.R.App.P. 38.

*Affirmed.* Double costs.

---

**3.** The bankruptcy court's determination on this point was, we note, explicitly affirmed by the district court.