The County of Allegheny, the City of Pittsburgh, the School District of Pittsburgh and Frank Venura, Louis H. Artuso, John J. Fellon, Joseph E. Feledick, Glenn C. Jones, Leo J. McLaughlin and Samuel Rudick, Members of the Board of Property Assessment, Appeals and Review, Appellants, v. Three Rivers Management Corporation and Pittsburgh Athletic Company, Inc., Appellees.

Argued November 6, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Thomas M. Rutter, Jr.,* Second Assistant County Solicitor, with him *Stephen A. Zappala,* County Solicitor, *William R. Caroselli,* Assistant County Solicitor, *Ralph Lynch, Jr.,* City Solicitor, and *Justin Johnson,* Solicitor for School District, for appellants.

*Judd N. Poffinberger, Jr.,* with him *Stuart Nye Hutchison, Jr., Joseph C. Swaim, Jr.,* and *Kirkpatrick, Lockhart, Johnson & Hutchison,* for appellees.

OPINION BY JUDGE WILKINSON, November 27, 1974:

The fundamental question presented by the instant case is whether appellees are entitled to an injunction against appellants to prevent appellants from assessing

and taxing the leasehold interests of appellees in the Municipal Stadium in Pittsburgh known as Three Rivers Stadium. Appellees secured such an injunction from the court below after full hearing with some 245 pages of testimony and an adjudication of 60 pages containing 83 findings of fact and 16 conclusions of law. This appeal followed. We must affirm.

The appellants raised three questions on this appeal. First, does equity have jurisdiction? Second, does the General County Assessment Law, Act of May 22, 1933, P. L. 853, *as amended*, 72 P.S. §5020-101, authorize the assessment and taxation of a leasehold interest in real estate? Third, if the assessment and taxation of this leasehold interest is authorized, is it exempted by either the General County Assessment Law, or by the Public Auditorium Authorities Law, Act of July 29, 1953, P. L. 1034, *as amended*, 53 P.S. §23841, as authorized by the Constitution of the Commonwealth of Pennsylvania for public property used for public purposes? The lower court, in finding for appellees and awarding the injunction, answered the first and third questions in the affirmative, and the second in the negative. In affirming the lower court, we agree with the answers to the first and second questions and, therefore, find it unnecessary to consider the third question.

With regard to the first question, appellants had filed preliminary objections to the complaint in equity on the grounds that there was an adequate remedy at law to appeal from the assessment. In fact, the appellees filed an appeal from the assessment as a cautionary measure, but that proceeding has been held in abeyance pending the disposition of this case. The argument on the preliminary objections was heard by the court below, with two judges sitting, neither of whom later heard the case on the merits or was on the court en banc that dismissed the objections to the final decree. The preliminary objections were dismissed with a well-rea-

soned opinion rejecting appellants' arguments which were repeated to us. The lower court was correct when it stated that equity has jurisdiction to enjoin the improper assessment of property and collection of a tax when the party seeking the injunction asserts general lack of power to assess or levy, or the constitutionality, both of which were alleged here. Such cases are legion in our books, as recently as the *School District of Philadelphia and Thomas W. Rogers v. Damico, Inc.*, 15 Pa. Commonwealth Ct. 558, 328 A. 2d 190 (1974). In *Pittsburgh Public Parking Authority v. Board of Property Assessment, Appeals and Review*, 377 Pa. 274, 284, 105 A. 2d 165, 169 (1954), Chief Justice HORACE STERN, quoted in the opinion of the court below, set forth the principles here controlling: "Where a property owner denies the power to levy a tax on his property equity affords the remedy, but where there is merely an over-assessment or *inadequate exemption* the sole remedy is by appeal from the assessment as provided by statute. (citing many cases.)" (Emphasis in original.)

The two principal cases relied upon by appellants are readily distinguished. In *Rochester and Pittsburgh Coal Co. v. Indiana*, 438 Pa. 506, 266 A. 2d 78 (1970), our Supreme Court was divided as to whether a substantial constitutional question was raised. Apparently, it would have been unanimous that equity has jurisdiction here where there is no question but that a substantial constitutional question is raised and, in addition, another question even more fundamental, general want of power to assess and tax. It is clear to us that in *Y.M.C.A. v. Reading*, 402 Pa. 592, 167 A. 2d 469 (1961), the other case heavily relied upon by appellants, Justice COHEN's well-reasoned opinion establishes that he would allow equity jurisdiction in this case where a general want of power to assess or tax is asserted, whereas he denied equity jurisdiction in that case where the

issue was not general want of power but rather the extent of the assessment.

The second question poses the problem of whether the appellees' leasehold interest is real estate and, therefore, as real estate is subject to taxation under Section 204 of the General County Assessment Law, Act of May 22, 1933, P. L. 853, *as amended*, 72 P.S. §5020-204 (Supp. 1974-1975). The long history of the law in Pennsylvania is against appellants on this point. In *Kile v. Giebner*, 114 Pa. 381, 7 A. 154 (1886), the court held that a leasehold interest was not real estate and could be sold by the Sheriff on a *fieri facias* as personalty. In *Townsend v. Boyd*, 217 Pa. 386, 394, 66 A. 1099, 1101 (1907), the court was considering a lease for two thousand years with a rental of "one pepper corne at or upon the feast of St. Michaell the Archangell, if the same be lawfully demanded, and also paying and discharging the aforesaid Chiefe or Quit Rent of one shilling yearly," and stated in its opinion: "A leasehold interest is not real estate, but merely a chattel real, which is personal property (citing cases)."

In *Gulf Oil Corporation v. Cumberland County*, 8 Pa. D. & C. 2d 1 (1956), President Judge SHUGHART had before him a complaint in equity to enjoin the assessment and collection of taxes under the Fourth to Eighth Class County Assessment Law, Act of May 21, 1943, P. L. 571, *as amended*, 72 P.S. §5453.101, against a leasehold of a service station on the Pennsylvania Turnpike. In a well-reasoned opinion, wherein all of the arguments and most of the cases relied upon by appellants here are discussed and discarded, the court held that the leasehold interest was not subject to assessment and taxation as real estate. Judge SHUGHART concluded in that case, as we conclude in this case: "We are constrained to follow the weight of authority and conclude that plaintiff's leasehold is not subject to assessment for taxation under The Fourth to Eighth Class

County Assessment Law of May 21, 1943, as amended, supra. In view of this result it is unnecessary to pass upon the question of whether or not the service station is exempt from taxation as public property which is used in the performance of a governmental function." 8 Pa. D. & C. 2d at 7-8.

We are not here dealing with the special situation of a long-term mineral lease which is considered in Pennsylvania, under some circumstances, as a sale of the minerals in place and therefore, of course, the minerals are subject to an assessment and taxation in the name of the lessee. Nor are we dealing with the assessment of a building owned by a lessee on leased property. Such cases are entirely inapposite. *See Pennsylvania Stave Company's Appeal*, 236 Pa. 97, 84 A. 761 (1912).

Three Rivers Stadium was built by the Stadium Authority of the City of Pittsburgh pursuant to the Public Auditorium Authorities Law, Act of July 29, 1953, P. L. 1034, *as amended*, 53 P.S. §23841. The Stadium Authority entered into a lease with Three Rivers Management Corporation, one of the appellees, under which the Three Rivers Management Corporation operates and maintains the Stadium. The lease is most unusual in form and content, tailored to this unique situation. For example, the term of 40 years was determined, not by the negotiations between the parties, but by the length of a bond issue by which funds were secured to build the Stadium. On oral argument, appellants attempted to establish that the rights given to appellee, Three Rivers Management Corporation, were so extensive as to create in it the incidents of ownership over a sufficiently long period of time that it might be considered to be the owner. Assuming there to be such a principle of law, appellees have no such extensive rights. For example, appellees are given the right to sub-lease and license the use of the premises, but only with the express approval of the lessor in each instance, both as to iden-

tity of the sub-lessee or licensee, the date or term of the arrangement, and the price to be charged—under such circumstances, the "right" to sub-lease or to license is not much of a "right." Indeed, it might be more persuasively argued, based on the extensive testimony in this record, that what is entitled a lease, as distinguished from being identified as a deed, is more properly described as an agreement to manage.

Affirmed.