In re **CHESTNUT RIDGE PLAZA ASSOCIATES, L.P.,** Debtor.

**CHESTNUT RIDGE PLAZA ASSOCIATES, L.P.,** Movant,

v.

**FOX GROCERY COMPANY,** Respondent.

**Bankruptcy No. 91–04271 JKF. Motion No. OWK–6.**

United States Bankruptcy Court, W.D. Pennsylvania.

July 22, 1993.

As Amended Sept. 15, 1993.

Owen W. Katz, Bernstein and Bernstein, P.C., Pittsburgh, PA, for debtor.

Philip E. Beard and George T. Snyder, Stonecipher, Cunningham, Beard & Schmitt, Pittsburgh, PA, for Fox Grocery Co.

Many Emamzadeh, Klett Lieber Rooney & Schorling, P.C., Pittsburgh, PA, for Fox Grocery Co., Kassel Corp.

George M. Cheever, Kirkpatrick & Lockhart, Pittsburgh, PA, for John Alden Life Ins. Co. of NY.

## MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

Before the court is the motion of Debtor, Chestnut Ridge Plaza Associates, L.P., for approval to reject a lease. The relevant facts are undisputed and the parties have submitted the issue upon the motion and response, affidavits, documents of record, and briefs.

Debtor filed this Chapter 11 on or about November 20, 1991, and has continued in possession of its property. Debtor's business is to own and operate the Chestnut Ridge Plaza Shopping Center (hereafter "shopping center"). Respondent, Fox Grocery Company (hereafter "Fox"), a tenant of 18,000 square feet in that shopping center pursuant to a lease dated April 20, 1979, operates a retail grocery. The lease contains a restriction which prohibits Debtor from leasing to any other retail supermarket any premises in which it has an interest within a radius of ten miles from the tenant's space in the shopping center.

The bankruptcy was caused in part by a vacancy of 41,000 square feet of anchor space in the shopping center created when a former tenant filed bankruptcy and rejected the lease in approximately the spring of 1991. Since then no tenant has rented the space. Debtor recently was notified of interest in the space by Giant Eagle, an entity which operates retail supermarkets. Debtor now seeks authority to reject its lease with Fox so that it may enter into a lease with Giant Eagle for the purpose of having an anchor tenant in the 41,000 square feet of vacant space. Debtor opines that if the lease with Fox is rejected, the restrictive covenant which prohibits Debtor from leasing space to another retail grocery will be unenforceable. Fox argues to the contrary and contends that the restrictive covenant will remain in effect and will be enforceable. The mortgagee which holds the paper on the shopping center supports Fox's position. The motion requires resolution of the issue concerning the post-rejection enforceability of the restrictive covenant, necessitating analysis of Pennsylvania law which governs this transaction and § 365 of the Bankruptcy Code.

There are two camps developing in the relevant case law.[1] One appears to find support for its idea that rejection by a debtor-lessor always terminates a lease and all of lessor's obligations under it based on the philosophy that, in 11 U.S.C. § 365(h), the Bankruptcy Code "provides certain rights to a lessee whose lease has been rejected and ... no more." *In re Carlton Restaurant, Inc.*, 151 B.R. 353, 356 (Bankr. E.D.Pa.1993). The other viewpoint relies on the proposition that § 365(g) and § 365(h), read together, do not provide for an automatic termination or breach in all cases in which a debtor-lessor rejects the lease. After thorough research into the subject, this court aligns with the second theory. Thus, concerning the specific issue before us, for the reasons which follow, we find that the restrictive covenant would be enforceable even if Debtor rejected the lease. Otherwise, the tenant's leasehold interest would be diminished, changed and modified due to bankruptcy's intervention.

---

1. Both recognize that the analysis of rejection by a debtor-lessor is different from that when the debtor is the tenant.

This is an impermissible result. *In re Wood Comm. Fund I, Inc.*, 116 B.R. 817, 818 (Bankr.N.D.Okla.1990). *Cf., In re Joshua Slocum, Ltd.*, 922 F.2d 1081 (3d Cir.1990), *rehearing denied* (recognizing congressional intent to maintain a nondebtor's full benefit of his bargain with a debtor).

Title 11 U.S.C. § 365(h)(1) provides that when a debtor who is a lessor rejects a lease with a tenant, the tenant has the option to (a) "remain in possession of the leasehold ... under any lease ... the term of which has commenced for the balance of such term and for any renewal or extension of such term that is enforceable by such lessee ... under applicable nonbankruptcy law" or (b) to treat the lease as terminated. If the lessee remains in possession, then § 365(h)(2) limits the lessee's claim for damages caused by the debtor's post-rejection nonperformance to an offset against the rent reserved under the lease. Section 365(h)(2) also provides that a lessee who remains in possession after rejection "does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset."

 The issue requires discussion of the meaning of the language in § 365(h)(1) which states: "The lessee ... may remain in possession of the *leasehold* " (emphasis added). The parties agree that, at the least, a leasehold includes the right of the lessee to retain the essential elements of the lease—possession, term, and rent. *See, e.g., In re Arden and Howe Associates, Ltd.*, 152 B.R. 971 (Bankr.E.D.Cal.1993); *In re Lee Road Partners, Ltd.*, 155 B.R. 55, 61–62 (Bankr.E.D.N.Y.1993). Whether it includes more than the aforesaid essential aspects of the lease turns on the application of the relevant state law. *See Nobelman v. American Sav. Bank.*, — U.S. —, —, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993) (property interests are to be determined by state law absent a controlling federal rule.) [2] *See also, In re*

*Lee Road Partners, Ltd., supra* (under Florida law the granting of a leasehold estate, for practical purposes, is the equivalent of absolute ownership and under Florida's Uniform Commercial Code, a leasehold interest is the interest of the lessor or lessee under the lease contract). In *Lee Road Partners* the debtor sought to reject a lease in order to deal directly with subtenants of the lessee and acquire higher rents. The court refused to authorize such a ploy and concluded that the debtor's lessee was entitled to the protection of § 365(h), *i.e.*, its possession of the "leasehold". Judge Duberstein found that the tenant's leasehold interest would remain intact post-rejection.

 Pennsylvania law applies to this lease. In Pennsylvania, a "leasehold interest in land" is subject to sale as a personal chattel interest in realty, and not as real property. *Kile v. Giebner*, 114 Pa. 381, 7 A. 154 (1886); *Allegheny County v. Three Rivers Management Corp.*, 16 Pa.Cmwlth. 361, 328 A.2d 567, 569 (1974). Black's Law Dictionary defines "leasehold" as

[a]n estate in real property held by lessee/tenant under a lease. The four principal types of leasehold estates are the estate for years, periodic tenancy, tenancy at will, and tenancy at sufferance. *The asset representing the right of the lessee to use leased property.*

(Emphasis added.) BLACK'S LAW DICTIONARY 890 (6th ed. 1990). "Leasehold interest" is defined as

[t]he interest of the lessor or the lessee under a lease contract.... The interests which the lessee has in the value of the lease itself in condemnation award determination. The difference between the total remaining rent under the lease, and the rent lessee would currently pay for similar space for the same time period.

BLACK'S LAW DICTIONARY 890 (6th ed. 1990). *See also* 13 Pa.Cons.Stat.Ann. § 2A103. Thus, in Pennsylvania, the asset which constitutes a "leasehold interest" is a chattel interest. It is not merely coexten-

---

**2.** Section 365(h)(1) authorizes the tenant to remain in possession to the extent available under applicable nonbankruptcy law. Thus, there is no supremacy clause violation in applying state law. *In re Lee Road Partners, Ltd.*, 155 B.R. at n. 15.

sive with possession of particular realty under the lease. The lease is the "agreement which gives rise to relationship of landlord and tenant...." BLACK'S LAW DICTIONARY 889 (6th ed. 1990).

■ Furthermore, a leasehold includes a personal interest to use and enjoyment which is not set aside by § 365(h)(1). *In re Lee Road Partners, Ltd.*, 155 B.R. at 61–62. The leasehold interest at issue includes an exclusive right to use and enjoy the property. *In re Carlton Restaurant*, 151 B.R. 353 (Bankr.E.D.Pa.1993), recognized the personal aspect of a leasehold. There, the court faced the issue of what options were available to a debtor-tenant whose lease previously was rejected, in a prior bankruptcy case, by a debtor-lessor. The debtor-tenant wanted to assume and assign its lease which had favorable rental rates. The consequences to the tenant of the prior rejection of the lease by the former debtor-lessor was the focal point of the discussion. The court did not focus upon the distinction between "a lease" and "a leasehold" even though the court recognized the personal nature of the leasehold. *Carlton Restaurant* stands for the proposition that rejection by a debtor-lessor terminates the lease although the court noted that "[i]f a tenant whose lease is rejected chooses to remain in possession, it should be able to do so under as many of the terms of the rejected lease as possible" [citations omitted].[3] 151 B.R. at 357. One significant term of the lease in question is the restrictive covenant.

■ This court does not agree that a lease is *always* terminated upon rejection by a debtor-lessor. One option given to a tenant by § 365(h)(1) is to treat the lease as terminated, quit the premises and state its claim against the estate as an unsecured claim. It does not give the tenant who elects to stay in possession the choice of treating the lease as terminated, retaining possession and limiting its damage claim to an offset of rents. Rather, the tenant who stays in possession does *not* treat the lease as terminated.[4] Furthermore, where the tenant remains in possession, the lease is not breached by virtue of the rejection because of § 365(g). *See* 11 U.S.C. § 365(g) ("*[e]xcept as provided in subsections (h)(2) and (i)(2) of this section, the rejection of an executory contract or unexpired lease of the debtor constitutes* a breach of such contract or lease ...") (emphasis added). Thus, the rejection of a lease does not automatically constitute its termination or its breach. In this case, the lease will not be breached or terminated because Fox has elected to stay in possession. If the lease is not in breach and is not terminated, it must still exist post-rejection.

■ Therefore, when a lessee elects to remain in possession when a debtor-lessor rejects a lease, the only logical interpretation of § 365(h)(2) is that the terms of the lease remain operative between the parties to the lease [5] but that damages against the debtor for nonperformance are limited to an offset against rents.[6] Simply put,

---

3. The court continues that a debtor-lessor should not be shackled with a bad lease *after the tenant vacates the premises.* This is not the situation before this court.

4. For purposes of this proceeding, Fox has informed Debtor that it will elect to remain in possession and, therefore, not treat the lease as terminated.

5. *See Matter of West Electronics, Inc.*, 852 F.2d 79, 82–83 (3d Cir.1988) which held that a debtor-in-possession is a different entity from the debtor. Therefore, in the instant case the debtor-in-possession was not a party to the lease.

6. Fox argued that the effect of § 365(h) is to excuse Debtor-lessor from performing any affirmative obligations under the lease but not to excuse nonperformance of covenants which require no action by Debtor. This view appears

to be shared by Collier. *See* 2 COLLIER ON BANKRUPTCY ¶ 365.09, at 365–58 (15th Ed. 1993) ("When the debtor has executed the lease as lessor, a rejection of the lease results merely in the cancellation of covenants requiring performance in the future by the debtor; rejection does not terminate the lease completely so as to divest the lessee of his or her estate in the property."). Some courts have stated that § 365(h) was designed to preserve the lessee's possessory interests in its leasehold while allowing the debtor-lessor "to escape the burden of providing continuing services to a tenant." *In re Lee Road Partners, Ltd.*, 155 B.R. at 60 (citation omitted). The corollary is that rejection by a debtor-lessor does not affect the lessee's interest in the lease. *Id.* This court does not read § 365(h) as dealing with performance obligations. Although it is somewhat implicit that a debtor which rejects a lease and therefore de-

"rejection" is the decision by the estate not to assume a lease because it is not a favorable investment. Rejection does not alter the substantive rights of the parties to the lease. It is merely the decision of the bankruptcy estate not to become a party to the lease thereby avoiding any unfavorable consequences of a bad bargain made prepetition by the debtor. Michael T. Andrew, *Executory Contracts in Bankruptcy: Understanding "Rejection"*, 59 U.COLO. L.REV. 845 (1988) (hereafter "Executory Contracts"). In essence, the estate "decline[s] the asset, leaving the liabilities of the debtor intact to form the basis of a claim." *Id.* at text accompanying nn. 161, 162. That is, it defines the damages against the estate.

In this case, Fox argues and this court finds that its leasehold interest includes the restrictive covenant which 'operates to its benefit, enhancing its use of the property and the value of its lease. Debtor argues that the restrictive covenant is not enforceable post-rejection because under § 365(h)(2) a lessee who elects to remain in possession of the leasehold is limited to offsetting the rents it owes Debtor from any damages arising from Debtor's nonperformance of lease obligations after the rejection and no more. However, a fair reading of § 365(h)(1) and § 365(h)(2) is that they were enacted to afford the lessee the option of selecting the parameters of its claim which will define its damages. Section 365(h)(1) provides the tenant with the option of treating the rejected lease as terminated. A corollary to the termination of the lease is that the lessee will have a claim for damages which will be treated as a prepetition, unsecured claim. Section 365(h)(1) also affords the lessee the opportunity to remain in possession of the

leasehold. If that selection is made, then § 365(h)(2) provides the tenant with an offset against the rent reserved under the lease for *damages* caused to the lessee by the post-rejection nonperformance of any obligation of the debtor under the lease. These damages are not calculated under the Bankruptcy Code in the same way as are the damages which arise by the tenant's election to treat the lease as terminated under § 365(h)(1).

The question then is whether an equitable action to enforce the covenant is subsumed within the concept of "damages" under § 365(h)(2). If the tenant elects to remain in possession and Debtor's breach of the covenant results in a quantifiable claim to money damages, a literal reading of § 365(h)(2) would limit damages against Debtor to an offset against the rents. There are two notable difficulties with such a view of § 365(h)(2); *i.e.*, (1) whether the tenant's rights against *third parties* are restricted and (2) whether damages can be quantified to the extent that injunctive relief would be unavailable to the tenant. Regarding the first, § 365(h)(2) applies only to the debtor and tenant, not to third parties who may be affected. Looking at § 365(h)(2), the parties centered their arguments on whether or not the restrictive covenant in the lease is enforceable by Fox against *Debtor*. That focus is too narrow. Clearly § 365(h)(2) does not limit the lessee's right against third parties regardless of whether the lessee could enforce the restrictive covenant by a suit for injunctive relief or other remedies to prohibit *Debtor* from violating the restrictive covenant. Thus, even if Fox was unable to enjoin Debtor from entering into a lease with Giant Eagle, its rights to attempt to prohibit Giant Eagle from operating a grocery store which would violate the restrictive covenant and interfere with Fox's use and enjoyment of its property would not be limited by § 365(h)(2).[7]

clines the asset in essence is giving notice that it may not perform, nonetheless what § 365(h)(2) does is limit the damages available against debtor should debtor fail to perform.

7. In this case, unlike *Arden and Howe Associates, supra,* Giant Eagle would not be a successor to Debtor's interest as lessor. Thus, the ruling in *Arden and Howe Associates* that a debtor's successors in interest are able to take

Regarding the second difficulty, case law in this district suggests that damages may not be a sufficient remedy for breach of a restrictive covenant, thereby giving rise to injunctive relief. In the case of *J.C. Penney Co., Inc. v. Giant Eagle, Inc.*, 813 F.Supp. 360 (W.D.Pa.1992), *aff'd without opinion*, 995 F.2d 217 (3d Cir.1993) (Table), a tenant sought to enforce a restriction against another tenant in the same fashion which could occur in the case at bench if Debtor leases to Giant Eagle and Fox remains in possession. Although that case did not involve a bankruptcy, J.C. Penney was a tenant which sought an injunction against another tenant, Giant Eagle, to prevent Giant Eagle from operating a drug store at the shopping center in violation of a restrictive covenant in the lease which J.C. Penney had with the landlord. In essence, J.C. Penney was given an exclusive tenancy for the operation of a drug store or drug department in a store in which a registered pharmacist was in attendance. Despite notice by the landlord that J.C. Penney refused to waive its exclusive tenancy provision, Giant Eagle opened a pharmacy in its retail grocery. J.C. Penney then sought an injunction. The court stated:

> Breach of an exclusive provision in a shopping center lease may not *necessarily* cause irreparable damage to the tenant protected by such a clause; however, irreparable harm is *almost* inherent in such a situation....

813 F.Supp. at 369 (emphasis in original). The court quoted *Walgreen Co. v. Sara Creek Property Co., B.V.*, 966 F.2d 273, 279 (7th Cir.1992), as follows:

> ... injunctions to enforce exclusivity clauses are quite likely to be justifiable by just the considerations present here—damages are difficult to estimate with any accuracy and the injunction is a one-shot remedy requiring no continuing judi-

cial involvement. So there is an argument for making injunctive relief presumptively appropriate in such cases, but we need not decide in this case how strong an argument.

*See also, K–Mart Corp. v. Oriental Plaza, Inc.*, 875 F.2d 907, 915–16 (1st Cir.1989); *Philip Morris Inc. v. Pittsburgh Penguins, Inc.*, 589 F.Supp. 912, 920 (W.D.Pa. 1983), *aff'd*, 738 F.2d 424 (3d Cir.1984); *John G. Bryant Co., Inc. v. Sling Testing & Repair, Inc.*, 471 Pa. 1, 369 A.2d 1164, 1167 (1977). Because the continuing nature of a violation of a restrictive covenant in a shopping center lease was determined to "greatly reduce the efficacy of an award of money damages as a remedy", *J.C. Penney Co.*, 813 F.Supp. at 369, the court concluded that J.C. Penney was not able to be fully compensated in damages and was likely to prevail on the merits. Thus, the court issued a preliminary injunction against Giant Eagle.

 As illustrated in *J.C. Penney*, damages are difficult to calculate when the action arises from breach of a restrictive covenant in a shopping center lease and results in lost profits. Thus, even as to Debtor, a suit for injunctive relief may not be precluded on the ground that § 365(h)(2) addresses only "damages". Historically, injunctive relief is appropriate only if money damages are inadequate to remedy the wrong suffered by the plaintiff. *See Walgreen Co. v. Sara Creek Property Co., B.V.*, 966 F.2d 273 (7th Cir.1992). In *J.C. Penney*, the court awarded a preliminary injunction against Giant Eagle because damages could not be quantified readily.[8] Further, *J.C. Penney* indicated that in Pennsylvania there is no public policy against enforcement of restrictive covenants in shopping center leases. *See Teodori v. Werner*, 490 Pa. 58, 415 A.2d 31 (1980). However, they are to be strictly construed. In *Sun Drug Co. v. West Penn*

---

advantage of debtor's rejection does not apply here. Giant Eagle would be a lessee under a new lease for different space in the shopping center.

**8.** In *Walgreen Co.* Judge Posner wrote: "We cited cases in which damages have been awarded for the breach of an exclusivity clause in a

shopping-center lease. But they are awarded in such circumstances not because anyone thinks them a clairvoyant forecast [of damages] but because it is better to give a wronged person a crude remedy than none at all." 966 F.2d at 277.

*Realty Co.*, 439 Pa. 452, 268 A.2d 781 (1970), the Pennsylvania Supreme Court noted that a restrictive covenant is valid when it is limited in scope, space and time to the extent required to protect the lessee, the party benefitted by the restriction. The covenant in this case meets those standards. The restriction was part of the bargain "to accommodate the commercial expectations of the parties." *In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1092 (3d Cir. 1990) *(rehearing denied )*. In a bankruptcy context, in *In re Joshua Slocum, Ltd.*, the United States Court of Appeals for the Third Circuit recognized the policy of Congress to require the nondebtor to receive the full benefit of the bargain that had been made with the debtor. 922 F.2d at 1091. Therefore, Fox is entitled to enforce its exclusive right to operate a grocery store on Debtor's premises.

Although damages are limited, this court concludes that § 365(h)(2) does not restrict suits in equity; *e.g.,* injunctions, specific performance, or other nonmonetary damage remedies against a debtor-lessor who rejects the lease. The obligations under the lease and rights associated with the tenant's leasehold interest do not just vanish because a debtor has rejected the lease. The leasehold interest remains intact and the lease remains operative between the parties. *See Executory Contracts, supra; In re Lee Road Partners, Ltd.*, 155 B.R. at 63–64. Even if the analysis that Fox can seek equitable relief against Debtor under § 365(h)(2) is flawed, Fox still can offset its losses against rents as authorized in § 365(h)(2). Furthermore, the damages and causes of action that Fox would have against third parties are not limited by the Bankruptcy Code but are defined by state law. Under the tenet of *J.C. Penney, supra,* Fox could seek injunctive relief against the prospective tenant, Giant Eagle, to the extent that the new tenancy would interfere with Fox's right to an exclusive tenancy to use space in the shopping center as a retail supermarket. The value of an exclusive use is both material and economically significant. Therefore, the court finds that even if Debtor were to reject the lease, the restrictive covenant would remain in force and effect.

This court concludes that rejection of the Fox lease for the purpose of entering into a lease with Giant Eagle is not in the best interest of the estate because of the adverse consequences which could befall the estate. Those consequences are:

(1) Giant Eagle would be subject to suit to enjoin it from conducting a retail grocery business on Debtor's premises;

(2) if an injunction is granted, Debtor would be left without an anchor tenant operating in the space; and

(3) if Fox suffers any damages it could offset those damages against rents due to the lessor.

Therefore, the estate could be in the position of receiving reduced rents from Fox because of the offset as well as not having Giant Eagle operating as an anchor tenant.

The only reason Debtor has advanced in support of its request to reject the lease with Fox is to enter into a lease with Giant Eagle. Debtor has not established that it will be relieved of any burdens by rejecting the lease with Fox and entering into a lease with Giant Eagle. Even under a lease with Giant Eagle, Debtor would be required to provide services which, by rejection, it seeks to avoid providing to Fox, including abiding by the restrictive covenant inasmuch as Giant Eagle demands that if it leases the anchor space, it must obtain a similar covenant. In fact, the same types of services would have to be provided. Debtor is entitled to exercise its business judgment regarding the assumption or rejection of its leases. However, such decisions must be in the best interest of the estate. Because this court has concluded that the rejection of the lease with Fox to enable Debtor to enter into a lease with Giant Eagle is not in the best interest of the estate, the motion of Debtor for authority to reject its lease with Fox Grocery Company will be denied.

An appropriate order will be entered.

## ORDER

And now, to-wit, this 22nd day of July, 1993, for the reasons set forth in the foregoing Memorandum Opinion, it is ORDERED that the Motion to Approve Rejection of Lease with Fox Grocery Company on behalf of Debtor is DENIED.