In re Lee J. MILSTEAD, Debtor.

Lee J. MILSTEAD, Plaintiff,

v.

TELE MEDIA BROADCASTING, INC., Defendant.

Bankruptcy No. 94–30273–T.
Adv. No. 94–1394.

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Jan. 16, 1996.

Gary M. Nuckols, Durrette, Irvin, & Bradshaw, P.C., Fredericksburg, Virginia, for defendant.

Robert B. Easterling, Easterling & Goodall, Stafford, Virginia, for debtor.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This case involves the chapter 13 debtor lessor's rejection of a lease pursuant to 11 U.S.C. § 365(a) and the consequences of the rejection to the lessee. The debtor filed a complaint to require the defendant lessee to pay rent and also filed a motion objecting to the defendant's proof of claim. Trial on the complaint and motion was held on October 11, 1995, at which time the court took the issues under advisement.

For the reasons stated in this memorandum opinion, the court will allow defendant's claim in the amount of $17,443.50 and dismiss debtor's complaint. This opinion constitutes the court's findings of fact and conclusions of law as required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

### Findings of Fact

On September 28, 1992, debtor, Lee J. Milstead, entered into a lease with the defendant, Tele Media Broadcasting, Inc., under which the debtor leased commercial real property to the defendant. Defendant is in the business of operating a radio station. The lease commenced on November 1, 1992, and was to end on October 31, 1997. The lease provided that no rent was to be paid until December 31, 1992, after which the rent was $800.00 per month. On October 1, 1993, the rent increased to $830.00 per month.

Due to the nature of the defendant's business, improvements first had to be made to the premises in order for the defendant to operate. Pursuant to the lease, responsibility for making these improvements, along with other repairs, fell on the debtor. From the outset, debtor was anything but expedient in making the improvements. Debtor's failure to complete the work in a timely manner delayed defendant's taking possession of the premises until February 1993 and remained a point of contention between the parties for the duration of the lease.[1]

Debtor filed a chapter 13 petition on January 26, 1994. On February 8, 1994, debtor filed a chapter 13 plan which provided that the debtor would reject the lease with defendant. The plan, however, was denied confirmation by this court on April 26, 1994. That same day, debtor filed a modified plan. This plan was confirmed on June 23, 1994, and included the provision that debtor was rejecting the lease.

In the meantime, defendant had ceased paying rent in February 1994, citing the fact that debtor had still not made the agreed upon improvements and repairs. When defendant found out about debtor's intent to reject the lease (presumably in February 1994 when it received notice of debtor's original plan), defendant immediately made plans to relocate. Defendant quickly came to an agreement with debtor's brother to move the station across the street from debtor's premises. Defendant vacated debtor's premises July 1, 1994, eight days after debtor's modified chapter 13 plan was confirmed.

1. After defendant had been in possession for only one month, the situation deteriorated to the point where the parties agreed that defendant would undertake the repairs itself with a corresponding abatement of rent. This agreement remained in effect until August 1993, after which the parties agreed that debtor would again be responsible for making the repairs and defendant would start paying full rent again.

Defendant filed a proof of claim in debtor's case on May 31, 1994, for $39,648.00. This claim was comprised of: a) defendant's initial costs to move the station to the debtor's premises less an amortized amount for the period that defendant actually occupied the premises, b) defendant's relocation costs, c) a credit to the debtor for the four months in which defendant did not pay rent, and d) a credit to the debtor for a security deposit. Prior to trial, defendant agreed with debtor that including the costs for the initial move to debtor's premises was improper, and the parties stipulated that defendant's claim is in the amount of $17,443.50.

### Discussion and Conclusions of Law

For this chapter 13 case the court must decide the following issues:

1) whether notice to the defendant lessee of debtor lessor's intent to reject the lease provided by debtor's original chapter 13 plan constituted rejection of the lease or whether formal court approval was required; and

2) whether the rejected lessee's obligation to mitigate damages under 11 U.S.C. § 365(h)(1) requires the lessee to remain in possession of the leasehold if remaining in possession results in less damages than the lessee's treating the lease as terminated.

### Court Approval Necessary For An Effective Rejection

Once a debtor lessor rejects a lease, the lessee may either treat the lease as terminated and vacate or may remain in possession of the leasehold for the balance of the lease. 11 U.S.C. § 365(h)(1).[2] In his complaint, debtor argues by implication that the lease was rejected in February 1994 when defendant was first made aware of debtor's intention to reject the lease in the original chapter 13 plan. Debtor goes on to argue that since defendant did not vacate the premises until

July 1, 1995, defendant clearly remained in possession of the leasehold and as a result, subjected its damage claim to the limits imposed by § 365(h)(2). Section 365(h)(2) limits a lessee's claim for post rejection damages to an offset of the rent reserved when the lessee chooses to remain in possession after the debtor lessor rejects the lease.

■ This court disagrees with debtor's contention that rejection of an unexpired lease can be based on the unilateral act of a debtor prior to court approval. It is clear under § 365(a) that rejection of an unexpired lease does not take place until the bankruptcy court approves the rejection.[3] Court approval is usually in the form of an order approving a trustee's motion to reject; however, in a case under chapter 11, 12, or 13, rejection of an unexpired lease can be in the form of a provision in a confirmed plan. *See e.g.*, 11 U.S.C. § 1322(b)(7) (allowing chapter 13 plan to provide for assumption or rejection of executory contract or unexpired lease); *see also* 2 Collier on Bankruptcy ¶ 365.03[2] (Lawrence P. King et al. eds., 15th ed. 1995). In this case, because the debtor never filed a motion to reject the lease, rejection did not take place until debtor's chapter 13 plan was confirmed on June 23, 1995.

■ Defendant vacated the premises on July 1, 1995, eight days after the lease was rejected. Defendant's action in moving so quickly clearly indicated its intent to treat the lease as terminated and not to remain in possession. Accordingly, defendant's claim for damages resulting from the rejection is not limited by § 365(h)(2).

### Duty to Mitigate under § 365(h)

■ Under § 365(g)(1), rejection of an unexpired lease by a debtor constitutes a

2. The Bankruptcy Reform Act of 1994 amended § 365(h), and the interests of lessees and holders of timeshare interests are now treated in different paragraphs. Because this case was commenced prior to October 22, 1994, all references to § 365(h) are to § 365(h) before it was amended.

3. Section 365(a) states in pertinent part: "the trustee, *subject to the court's approval*, may as-

sume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a) (emphasis added). *See also In re Revco D.S., Inc.*, 109 B.R. 264, 267–70 (Bankr.N.D.Ohio 1989) (holding that letter sent by debtor to landlord indicating intent to reject unexpired lease did not constitute rejection; rejection not effective until court gave its approval).

breach of that lease prepetition. Accordingly, the nondebtor party to the lease becomes the holder of an unsecured prepetition claim. 11 U.S.C. § 502(g); *see also Chestnut Ridge Plaza Assocs. v. Fox Grocery Co. (In re Chestnut Ridge Plaza Assocs.)*, 156 B.R. 477, 483 (Bankr.W.D.Pa.1993); *Kinser v. Bob Mullins Ford, Inc. (In re Legg)*, 51 B.R. 444, 446 (Bankr.W.D.Va.1985). Section § 365(h)(2) excepts from this general rule a nondebtor lessee who chooses to remain in possession of the leasehold after the debtor lessor rejects the lease. Under § 365(h)(2), a debtor lessor remains liable for any damages caused by the nonperformance of any obligation of the debtor under the lease, but the lessee's damages are limited to an offset of the rent due under the lease.

In this case, defendant's decision to treat the lease as terminated and vacate the premises greatly affected the amount of its claim against the debtor. Defendant incurred relocation costs of $22,393.50 which constitutes a general unsecured claim against the estate. If defendant had chosen to remain in possession, it would have had a claim (offset) of up to $830 a month for any post rejection damages, but many of its relocation costs such as constructing a new radio station antenna would have been avoided. Because many of the relocation costs could have been avoided if defendant remained in possession, debtor argues that the relocation costs did not result from debtor's rejection of the lease but were caused by defendant's decision to relocate after the rejection. Because the damages did not flow from debtor's rejection of the lease, defendant's claim should not be allowed. In essence, debtor asserts that defendant should have chosen to remain in possession because it would have been cheaper to the debtor.

■ The court finds no support for debtor's contention in the Bankruptcy Code. Section 365(h)(1) states: "[i]f the trustee rejects an unexpired lease of real property of the debtor under which the debtor is the lessor, ... the lessee ... may treat such lease as terminated ... or, in the alternative, the lessee ... may remain in possession of the leasehold ... for the balance of such term." Nothing in the language of

§ 365(h)(1) requires a nondebtor lessee to consider the disparity between its potential claims when deciding whether or not to remain in possession. *See Chestnut Ridge Plaza Assocs.*, 156 B.R. at 483 (stating that "a fair reading of § 365(h)(1) and § 365(h)(2) is that they were enacted to afford the lessee the option of selecting the parameters of its claim which will define its damages.").

■ Requiring a debtor to make such a consideration is contrary to the purpose behind § 365(h), which was enacted by Congress to protect nondebtor lessees of real property by ensuring that the bankruptcy of a debtor lessor did not result in a forced eviction. H.R.Rep. No. 595, 95th Cong., 2d Sess. 349 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6305 (stating "[s]ubsection (h) protects real property lessees of the debtor if the trustee rejects an unexpired lease under which the debtor is the lessor."); *see also In re Lee Road Partners, Ltd.*, 155 B.R. 55, 61 (Bankr.E.D.N.Y.1993), *aff'd*, 169 B.R. 507 (E.D.N.Y.1994); *In re Hawaii Dimensions, Inc.*, 39 B.R. 606, 608 (Bankr. D.Haw.1984). Debtor's suggestion that nondebtor lessees be forced to accept this protection when it is beneficial to the rejecting debtor finds no support in the legislative history.

■ The court does agree with debtor's assertion that § 365(h) requires the nondebtor party to a rejected contract or lease to mitigate its damages. *See Heck's Inc. v. Cowron & Co. (In re Heck's Inc.)*, 123 B.R. 544, 545–46 (Bankr.S.D.W.Va.1991). However, debtor's reliance on *R & O Elevator Co. v. Harmon*, 93 B.R. 667 (D.Minn.1988) to suggest that a party's duty to mitigate must govern a nondebtor's decision under § 365(h) is not persuasive. *R and O Elevator Co.* concerned a debtor's rejection of an executory contract and therefore sheds no light on the issue here. *R & O Elevator Co. v. Harmon*, 93 B.R. at 668–69. Thus, although § 365(h) requires a nondebtor lessee to mitigate its damages following a rejection, the duty to mitigate governs the lessee's course of conduct only after it has decided whether to treat the lease as terminated and vacate or to remain in possession; it does not govern the decision itself.

In conclusion, the court finds that the lease between debtor and defendant was rejected on June 23, 1995. Defendant was within its rights to treat the lease as terminated and vacate the premises. Due to the rejection, the defendant incurred costs in the stipulated amount of $17,443.50. Accordingly, debtor's motion objecting to defendant's claim must be denied and the complaint dismissed.[4]

A separate order will be entered.

4. In his complaint, debtor requests that defendant be ordered to pay $3,486.00 in unpaid rent to the estate. The amount of defendant's claim agreed to by the parties reduces defendant's claim by the amount of the unpaid rent. Because the court is allowing defendant's claim in the stipulated amount, it is unnecessary for the court to address debtor's complaint for turnover since defendant's claim has already been reduced by the amount of the unpaid rent.